Saul iS. Stbeit, J.
This is a special proceeding brought by Franklin National Bank as petitioner, to set aside (1) a finding of the ¡Superintendent of Banks that the public convenience and advantage would be promoted by the granting of the application of Bankers Trust Company to open a branch office in Rockville Centre, Nassau County, and (2) the approval of the application by the Banking Board of the Banking Department. Petitioner also seeks an order (1) directing the Superintendent and the board to grant hearings to petitioner and other interested parties before taking further action on the application and (2) directing them to make rules and regulations setting forth the standards to be applied in determining whether to grant applications for the opening of branch banking offices.
Section 29 of the Banking Law authorizes the Superintendent of Banks “if he shall find upon investigation that the public convenience and advantage will be promoted by the opening of such branch office ”, to submit to the Banking Board a bank’s application for permission to open a branch office. The section further authorizes the board, by a three-fifths vote of its members, to approve the application, in which event the Superintendent must issue a certificate authorizing the opening of the branch office.
The Superintendent, after investigation, made the required finding in connection with the application submitted to him by Bankers Trust Company and the Banking Board approved the same by a vote of more than three fifths of its members.
The petition alleges that petitioner operates two branch banking offices in Rockville Centre and that the granting of permission to Bankers Trust Company to open a branch of its own in Rockville Centre “creates destructive banking competition” in that community and diminishes the value of petitioner’s property investment in Rockville Centre and reduces the good will established by petitioner therein. Petitioner argues that a request by it for a formal hearing prior to respondents ’ action upon the Bankers Trust Company application had been denied. It admits, however, that petitioner and other banks had been given an opportunity at a conference held at the invitation of the Superintendent to make known their views as to whether the application ought to be granted. Petitioner alleges that respondents’ action was arbitrary and capricious, deprives petitioner of its property without due process of law, and also *567 deprives it of its constitutional right to the equal protection of the laws.
Respondents, by the Attorney-General of this State, contend that there is no statutory provision for the holding of a hearing by the Superintendent or by the Banking Board; that the Legislature did not intend to permit judicial review of the action taken by respondents; that petitioner has no standing to seek review of respondents’ action; and that, in any event there was no abuse of the discretion vested in the Superintendent.
It is well settled that existing licensees have no standing to maintain a special proceeding to review the granting of an additional license to another, merely because of the economic effect upon them of the additional competition which would result. In Matter of Dairymen’s League Co-op. Assn. v. Du Mond (282 App. Div. 69, app. dsmd. 306 N. Y. 595) the court declared (pp. 73-74): “ The economic interest of the existing licensees in an industry does not entitle them to be heard as a matter of constitutional right before additional members are admitted to the industry * * * The due process clause does not guarantee freedom from the economic injury which may result from competition (Hegeman Farms Corp. v. Baldwin, 293 U. S. 163, 170-171) * * * The situation is different where the interest of the existing licensees is not merely an economic one in freedom from competition but is a direct interest in the protection of their licenses against physical interference or impairment.” This case was followed in Matter of Nostrand Check Cashing Co. v. Clark (27 Misc 2d 799, affd. 13 A D 2d 922 [1st Dept., 1961]). The court there said (p. 800): “ The mere fact that a person is a licensee in an industry is not sufficient to entitle him to be heard as a matter of constitutional right before others are admitted into the industry and possible economic injury to petitioner does not encloak it with the status of an ‘ aggrieved person ’. * * * Our process of law does not guarantee freedom from the economic injury which may result from competition.” The petition of one licensed to cash checks, pursuant to the Banking Law, to annul a similar license issued by the Superintendent of Banks to another was accordingly dismissed.
Petitioner relies on the recent decision of the United States Supreme Court in Silver v. New York Stock Exch. (373 U. S. 341). In that case two nonmembers of the New York Stock Exchange had obtained, through members’ applications, temporary approval from the Exchange for certain telephone wire connections. Without notice or explanation the Exchange disapproved the applications for such wires. The court held *568 (p. 361) that “ exchange self-regulation is to he regarded as justified in response to antitrust charges only to the extent necessary to protect the achievement of the aims of the Securities Exchange Act” and that “no justification can be offered for self-regulation conducted without provision for some method of telling a protesting nonmember why a rule is being invoked so as to harm him and allowing him to reply in explanation of his position.” The Silver case (supra), did not involve the question whether a statutory licensee had legal standing to complain of the issuance of additional licenses merely because of the adverse economic effect of the additional competition resulting therefrom. The action complained of deprived the complainants of wire services essential to their well-being and profitable operation. The Exchange was not authorized by any statute to deprive nonmembers of wire connections. The holding that such nonmembers had the right to complain that the Exchange’s action violated the antitrust laws has no bearing upon the question whether petitioner, licensed by the Superintendent, pursuant to statute, to operate branch banking offices in a community, is in a position to apply for legal review of the issuance of a similar license to another as authorized by statute, merely because of the economic effect upon petitioner of the creation of an additional competitor.
For the reasons indicated, the court is constrained to hold that petitioner has no legal standing to obtain judicial review of respondents’ approval of the Bankers Trust Company application. It is accordingly unnecessary to consider the various other contentions made by respondents in opposition to the prayer of the petition. It may not be amiss, however, to observe that if petitioner and other affected banks were entitled to formal hearings before both the Superintendent and the Banking Board, all members of the affected public would possess a like right, for the statute requires a finding by the Superintendent “ that the public convenience and advantage will be promoted ” by the granting of the application for permission to open a branch banking office, not merely a finding that the convenience and advantage of existing banks would be promoted. It should likewise be observed that the Banking Law provides only for an investigation by the Superintendent and does not require hearings either by him or by the Banking Board. There is likewise no statutory requirement that respondents promulgate rules and regulations setting forth the standards to be applied in determining applications for permission to open branch banking offices.
*569 If the Superintendent and the Banking Board were each obligated to hold formal hearings, at which the public generally as well as banks claiming to be affected could present witnesses and cross-examine other witnesses, in connection with every application by a bank for permission to open a branch office, an intolerable burden would be placed upon the Superintendent and the board. The time available to the Superintendent for the performance of his many important duties would be seriously curtailed. As to the board, it is highly improbable that the Legislature could have intended that its members, who serve without compensation, should be required to devote to branch bank applications the time which the necessity of holding formal hearings would entail.
The relief sought in the petition is accordingly denied.