John P. Cohalah, Jr., J.
Plaintiffs seek an order in an action for a declaratory judgment to stay defendant, the New York State Liquor Authority (hereafter Authority), from effectuating plans to determine persons or the priority of persons who may receive new licenses to conduct package liquor stores *834 in the County of Suffolk; restraining the Authority from proceeding to conduct public or private drawings to determine such persons or their priorities in relation to the new package liquor store licenses and to restrain .the Authority from issuing any package liquor store licenses to any person so chosen by private or public drawing. Defendant, by cross motion, opposes the granting of any stay and seeks an order dismissing the amended complaint which is the basis for the application for the stay. Defendant contends that the complaint does not state facts sufficient to constitute a cause- of action for the relief sought; and also that the issues presented were heretofore determined in a proceeding in the Supreme Court, New York County between Suffolk County Retail Wine & Liquor Dealers Association, Inc. and the New York State Liquor Authority— in an article 78 proceeding.
The amended complaint (hereafter complaint) sets forth that the plaintiffs are the licensed owners of 12 package liquor stores now conducted by one or more of them in Bellport, Patchogue, Sayville, Oakdale, Bast Islip, Central Islip, Brentwood and Smithtown in the County of Suffolk, New York. The complaint then specifies some of the applicable laws and rules of the Authority pursuant to which the plaintiffs operated their respective businesses prior to August 6,1964. It goes on to say that the Authority on August 6 and 'September 22,1964 adopted new bulletins and amended the rules which were filed with the Secretary of State and which relate to removal of existing package liquor store licenses within and without the county. In addition, such bulletins and rules provide for the local Alcoholic Beverage Control Boards to accept applications for new package liquor store licenses pursuant to details specified therein and more particularly referred to as Bulletin No. 390 and role 17 (cf. 9 NYCRR 42.1 et seq.) of the Authority. The complaint further attacks the provisions of Bulletin No. 390 and rule 17 and the amendments to part 42 of subtitle B of title 9 of the State Liquor Authority Code which became effective on September 1 and December 1, 1964. Further, the complaint avers that there is no factual determination that public convenience and advantage will be served by accepting applications for removal of package store licenses or for the acceptance of applications for new package store licenses as to which, in effect, plaintiffs contend there is no public convenience or advantage to be served and that none has been shown. The complaint further alleges that the changes in the rules specifically resulted from findings and conclusions which were made and recommended by the Moreland Act Commission and not from independent study or *835 findings of the Authority or any of its members. It claims that the Authority will not consider public convenience and advantage in connection with its determination concerning applications to remove or issue new licenses for package liquor stores as required by sections 2 and 17 of the Alcoholic Beverage Control Law. It points out that 55 new applications for package store licenses have been filed for consideration by the Authority within the geographical bounds within which the plaintiffs now have their licenses.
The complaint also sets forth the serious economic loss and disadvantage to the plaintiffs and others similarly situated should the Authority permit the removal of licenses from other areas to nearby communities within Suffolk County; and that the Authority may now permit removal or issuance of new licenses for package stores without regard to the geographical locations of the existing licenses, except that they may not be removed to or issued for an area within 200 feet of a school or place of public worship. It further charges that the Authority has failed to perform its duty in permitting consideration by it, of applications for removal and issuance of new package and liquor store licenses.
The second cause of action set forth in the complaint is to the effect that 1177 applications for new liquor store licenses have been received by the various local Alcoholic Beverage Control Boards (hereafter ABC) throughout the State and that fees in the sum of $50 have been paid by each applicant therefor; it follows with factual statements that drawings by mechanical process were conducted by the Authority on January 16 and January 22, 1965 with the assistance of the “Honest Ballot Association ’ ’; that numbers were picked as a result of the drawing which permitted priority for consideration of the applications and their respective applicants; and then infers that the applicants so processed and approved will automatically receive licenses for package liquor stores. Then it alleges that many of the applicants are thus subject to the hazard or chance that they may not receive a number or even consideration of their application, despite the fact that they paid $50 fee therefor. As a conclusion the complaint states that the procedure set forth constitutes a lottery insofar as the new applicants are concerned and is therefore contrary to the State Constitution and to the provisions of the Penal Law.
Defendant contends in substance (1) that the plaintiffs do not have a vested right insofar as removals or issuance of new licenses are concerned; (2) that the plaintiffs’ economic interest docs not permit them to regulate or control removal or issuance *836 of new licenses; (3) that consideration of the applications for new licenses pursuant to a mechanical drawing is not a lottery or an illegal device; and (4) that the assumption that the Authority has not and will not consider public convenience and advantage as required by the existing Alcoholic Beverage Contra! Law is not the fact and may not be presumed in any event.
It should be noted that Bulletin No. 390 provides that after November 30,1965 applications will be processed and considered upon a continuing basis; and if the number assigned to an application was not chosen by the mechanical device that the applicant would still have the right to have his application considered at a later date without paying a new application filing fee.
The public records of the State of New York contain the findings, conclusions and recommendations of the Moreland Commission appointed by the Governor of the State of New York, who inter alia considered the subject of reappraising the law and procedures for the issuance of new and the transfer of existing licenses. After conducting hearings and making investigations, that commission made a report. The Governor made specific mention of this report in his message to the Legislature of the State of New York on February 10, 1964. In relation to package liquor store licenses that commission reported aud made several recommendations. Part of this report as it relates to package liquor stores is Agenda Item No. 1 (see Addendum to this opinion).
In conformance with the report and recommendations of the Moreland Commission and upon the approval and report of the Governor, provisions of the Alcoholic Beverage Control Law were amended and new bulletins and rules were issued and laws enacted by the Legislature of the State of New York and the Authority. (See L. 1964, ch. 531, particularly §§ 13, 14.)
Bulletin No. 390, inter alia, provides for filing of applications to remove package stores from other locations within the county and also consideration of such applications after October 1,1964 for removal of package store licenses from one county to a location in another county. This bulletin also provides for issuance of new package store licenses pursuant to applications to be received by the offices of the local boards in December, 1964 and in March, June and September of 1965. It also provided that after December 1, 1965 applications for new package store licenses shall be accepted by the Authority on a continuing basis.
In connection with Bulletin No. 390 referred to, the Appellate Division, First Department, on February 18, 1965 affirmed a determination of the Supreme Court, New York County, in Matter of Suffolk County Retail Wine S Liquor Dealers Assn. *837 v. New York State Liq. Auth. (44 Misc 2d 334 [Mangan, J.]). The Appellate Division stated concerning the Bules and Regulations recently adopted and specified by Bulletin No. 390 (23 A D 2d 552, 553): “ Finally, if the merits were to be reached, some of the court would conclude that the State Liquor Authority, in the proper exercise of discretion, was vested with the power to promulgate the particular rules and regulations and that its power in this connection Avas not limited by the provisions of existing statutes. (Cf. Matter of Hub Wine of Liq. Co. v. New York State Liq. Auth., 22 A D 2d 459.) ”
The court appreciates the financial investment of the plaintiffs and the hazards presented by the granting of new applications and the removal of package store licenses from other communities to the area serviced by plaintiffs.
In 1963 the Franklin National Bank objected to the Superintendent of Banks making a finding that public convenience and advantage would be served by granting the application of the Bankers Trust Company to open a branch office in Rockville Centre. The Supreme Court advised that the plaintiff had no standing to obtain a review of the action of the Superintendent of Banks merely because of prospective economic loss. See Matter of Franklin Nat. Bank v. Superintendent of Banks (40 Misc 2d 565, 567, affd. without opn. 20 A D 2d 682 [1st Dept.]) stating: “It is Avell settled that existing licensees have no standing to maintain a special proceeding to review the granting of an additional license to another, merely because of the economic effect upon them of the additional competition Avhich Avould result. In Matter of Dairymen’s League Co-op. Assn, v Du Mond (282 App. Div. 69, 73-74, app. dsmd. 306 N. Y. 595) the court declared: ‘ The economic interest of the existing licensees in an industry does not entitle them to be heard as a matter of constitutional right before additional members are admitted to the industry. * * * The due process clause does not guarantee freedom from the economic injury Avhich may result from competition (Hiegeman Farms Corp. v. Baldwin, 293 U. S. 163, 170-171). * * * The situation is different where the interest of the existing licensees is not merely an economic one in freedom from competition but is a direct interest in the protection of their licenses against physical interference or impairment. ’ ”
There is a presumption that public bodies and public officers Avill perform their duty. (See 3 McQuillin, Municipal Corporations [3d ed], p. 526, § 12.126 and Supp. pp. 35, 36; also, see, vol. 2, id., p. 386, § 744.) The allegations of the complaint that the State Liquor Authority Avill refuse to perform its duty as provided in sections 2 and 17 of the Alcoholic Beverage Con *838 trol Law are mere conclusions and do not have any legal basis or validity. In any event, should the State Liquor Authority issue any new licenses or permit the removal of existing licenses contrary to the public convenience and advantage, such action may be the subject of review. (See determinations, Fechter v. State Liq. Auth., N. Y. L. J., Jan. 29, 1965, p. 15, col. 8 [Greeberg, J.]; Matter of Dolgosheff v. State Liq. Auth., 44 Misc 2d 1051; Siben v. New York State Liq. Auth., N. Y. L. J., Jan. 4, 1965, p. 19, col. 2 [Stanislaw, J.]; Glamy Liqs. v. New York State Liq. Auth., N. Y. L. J., Dec. 8, 1964, p. 18, col. 6 [Anetjso, J.]. Also, see, Hub Wine & Liq. Co. v. New York State Liq. Auth., 44 Misc 2d 334, unanimously affd. 23 A D 2d 552. The Appellate Division affirmed the determination of the Special Term directing the Authority to issue findings to support its determination approving the removal of a package liquor store license. Also, see, Popular Liq. Store v. New York State Liq. Auth., N. Y. L. J., Feb. 17,1965, p. 20, col. 3 [Stanislaw, J.] and Matter of Messinger, N. Y. L. J., Dec. 28, 1964, p. 16, col. 5 [Tasker, J.].)
The legality of the 1964 amendments to the Alcoholic Beverage Control Law was considered, in Martin v. State Liq. Auth. (43 Misc 2d 682). This determination was unanimously affirmed in the Court of Appeals upon the opinion at Special Term of Cooke, J. (15 N Y 2d 707).
In the Martin decision (supra, p. 686) that court stated the following: “ More particularly, the law is well settled that it is not always necessary that license legislation prescribe a specific rule of action and, where it is difficult or impractical for the Legislature to lay down a definite and comprehensive rule, a reasonable amount of discretion may be delegated to the administrative officials (Matter of Barton Trucking Corp. v. O’Connell, 7 N Y 2d 299, 307, 312; Matter of Bologno v. O’Connell, 7 N Y 2d 155,159; Matter of Marburg v. Cole, 286 N. Y. 202, 211-212). ’’
At page 687: “ Thus the standard prescribed by the Legislature for the Liquor Authority in determining the issuance of licenses, the increase or decrease in the number thereof and the location of licensed premises is, as it has been, ‘ whether public convenience and advantage will be promoted ’. This guide was reaffirmed by the enactment of section 14 of chapter 531 of the Laws of 1964 which explicitly repeated the test of ‘ public convenience and advantage.’ ”
At page 688: “ The standard of ‘ public convenience or advantage ’ is not so vague and indefinite as to be a mere general reference to public welfare since the policy of the State, the *839 purpose of the Alcoholic Beverage Control Law, the requirements it imposes and the context of the provision in question show the contrary. This criterion is related to the main purposes of the law which are stated to be 1 fostering and promoting temperance ’ in the consumption of alcoholic beverages and 6 respect for and obedience to law.’ (Alcoholic Beverage Control Law, § 2.) Obviously the Legislature sought the number of licenses and the location of licensed premises so as to promote temperance and respect for law and, surely, public convenience and advantage are related thereto. ’ ’
At pages 689-690 the court discusses the status of existing licenses: ‘ ‘ Plaintiffs allege that their investment and property rights are threatened by the enforcement of sections 13 and 14 of chapter 531 of the Laws of 1964. Licenses to sell liquors are not contracts between the State and the person licensed such as to give the latter vested rights and so as to be protected against subsequent legislation (People ex rel. Lodes v. Department of Health, 189 N. Y. 187,192; Matter of Cohen v. Splain, 42 N. Y. S. 2d 498, affd. 266 App. Div. 678, affd. 291 N. Y. 558). No person has a vested interest in any law or legislative policy which entitles him to have it remain unaltered for his benefit (Matter of Eagan v. Livoti, 287 N. Y. 464, 468-469). The power to enact necessarily implies the power to repeal and one Legislature cannot be limited or bound by the actions of a previous one (Farrington v. Pinckney, IN Y2d 74, 82).”
The procedure adopted in the Martin case (supra) by the Authority, has been adopted by the Authority in the instant case. The subject of the status of package store licenses has been the subject of considerable litigation. In the treatise on Municipal Corporations of McQuillin (supra, vol. 9, p. 495, § 26.191, this subject was considered in some detail: “ Needless to say, a fixed numerical limit on liquor licenses is subject to alteration and amendment as the public interest requires, and a municipal legislative authority is free to alter an earlier policy determination, particularly where it was made by predecessor members who no longer hold office. Even where the municipal governing body passes an ordinance limiting the number of taverns and package stores, it may reasonably decline to issue a license beyond a number less than the maximum prescribed in the ordinance.”
Also, see, section 26.192 of the McQuillin text relating to limiting licenses as to areas and sites.
Plaintiffs’ claim that the drawing of numbers for priority in processing of the applications is an illegal lottery, is without *840 legal substance. None of the plaintiffs are applicants for new licenses and they may not be heard to complain of the procedures adopted in the processing of the new applications.
The Constitution (art. I, § 9) provides: “No law shall be passed * * * no lottery or the sale of lottery tickets, pool-selling, book-making, or any other hind of gambling, except parimutuel betting on horse races as may be prescribed by the legislature and from which the state shall derive a reasonable revenue for the support of government, shall hereafter be authorized or allowed within this state ”. There is no element of gambling in connection with the drawing to determine the position for the processing of the applications. The use of the-words “ mechanical drawing or lot ” does not necessarily infer that an illegal lottery or gambling is proposed. The Election Law provides for the position of candidates on a ballot to be determined by lot or a drawing. See sections 104 and 108 of the Election Law. That a drawing or lot shall be used to determine the position of a candidate for party or public office does not render the election a nullity nor does it taint the election with illegality. (See Dent v. Power, 1 A D 2d 1039 [2d Dept.], affd. without opn. 1 N Y 2d 825; also, see, Matter of Greitzer v. Power, 10 A D 2d 921.)
The order in which applications for new licenses may be processed must be determined by some method. The Moreland Commission suggested a public drawing. There is no case authority that supports the claim of the plaintiffs that the element of chance as to the numerical order in which the applications are to be processed, constitutes a lottery. The mechanical drawing to determine the order of processing in and of itself is a mere processing incident and does not constitute illegality. (See Kohn v. Koehler, 96 N. Y. 362, 367.) “ It was a mere appendage and incident to its main purpose by means of which the holder might by chance receive a larger sum than the principal and interest which the bond itself provided for. ’ ’ This is merely an incident in the consideration of the applications. The $50 filing fee paid by each applicant for license is not returned if a license is not granted or refused for any reason. The cost of processing the license bears a fair relationship to the fee charged. In any event, there has been no determination to the contrary on this subject. If the applicant for a license is not considered by reason of the order in which his particular license application is numbered, it does not deprive the applicant of consideration at a later date. In fact, as noted herein, the law provides that after December 1, 1965 licenses shall be processed and considered on a continuing basis.
*841 Motion of defendant to dismiss the complaint is accordingly granted. It would serve no purpose to require the defendant to answer a complaint which raises possible constitutional issues which have been determined herein against the plaintiffs. The issue as to the propriety or legality of the processing of the new applications for licenses does not affect the rights of plaintiffs since none of them are applicants for the new licenses. The motion for the stay is denied, the informal stay suggested by the court is vacated, and the complaint is dismissed.
ADDENDUM
MORELAND COMMISSION FINDINGS AND RECOMMENDATIONS CONCERNING PACKAGE STORE RESTRICTIONS
B. Package- Store Restrictions
1. Commission Findings. The Moreland Commission findings indicate that:
No new package store licenses have been issued in New York State since the ‘ ‘ moratorium ’ ’ of 1948. In that period the population of the State has increased sharply and new residential centers have grown. Concurrently with these changes in population, per capita consumption of alcohol has increased substantially.
This sales growth has resulted in many package store owners profiting not from their own business efforts, but from the windfall of restricted competition. Many persons desiring to enter the field have been unable to do so since no new licenses have been issued since 1948. These factors have combined to create a substantial artificial market dealing in “keys” to existing package stores, at prices which have frequently been astounding.
The moratorium has resulted in a tremendous premium on the privilege of moving a. package store from one location to another. The administrative decisions to allow or disallow these moves have been arbitrary and inconsistent. No useful purpose can be served in permitting the continuance of “removal” restrictions which defy rational decision-making.
Other provisions of the present law are out of place in a free enterprise system. They grant unwarranted protection against competition to the package store industry.
One example is the statutory requirement that package stores on the same street must be located at least 1,500 feet from each other in New York City, and at least 700 feet elsewhere in the State. No one seems to be able to explain how these distances were originally determined. In any event, careful studies now show that there is no discernible connection between temper *842 ate and lawful behavior and the establishment of such arbitrary and compulsory distances between package stores. These distance requirements have no present purpose except to restrict competition.
'Two more anomalous statutory restrictions are the limitation of one license to an individual and the provision that package stores may ¡sell only wine and liquor. Experience has not shown either of these provisions to have any special merit in promoting temperance and respect for law. Experience in other States has shown that the absence of such provisions produces no adverse effect upon temperance or law abidance.
People have come to expect the convenience and efficiencies of modern marketing methods and of open competition. There is no reason why citizens should be denied these benefits in the alcoholic beverage field.
2. Commission Recommendations. On the basis of its findings, the Moreland Commission has recommended legislation that would:
Eliminate the distance now required to exist between package stores, without changing, however, the prohibition against liquor stores within 200 feet of churches and schools.
Provide that anyone who meets the objective standards of existing law (such as good character, the absence of a criminal record and financial responsibility) should be granted a license. The license would attach to the licensee rather than to the premises, and a licensee would be allowed to operate more than one outlet. Licenses would be automatically renewable each year, unless terminated for cause.
Allow licensees to sell items other than liquor and wine, provided that they are sold only in areas completely separated physically from the liquor and wine department. Sodas and other mixes, however, could be sold in the same department as alcoholic beverages. The requirement of a physically separate department would continue the protection against possible unlawful sales.
To put these changes into effect in an orderly way, and the “ distance ” and “ removal ’’rules immediately. No new licenses would be issued for one year. During that year, present licensees would be permitted to move their premises to shopping centers or any other location in the State which complies with local zoning ordinances, and is not within 200 feet of a church or school. Present licensees would also be allowed immediately to carry nonalcoholic beverages commonly associated with the consumption of liquor.
*843 Under this transition period, make available, one year from the effective date of these new laws, 500 licenses for qualified applicants paying an initial fee of $5,000 each. The following year an additional 500 would be made available at an initial fee of $2,500. If there are more qualified applicants than licenses, the 500 each year would be selected by a public drawing. After this three-year transition period, any applicant who meets the requirements would be entitled to a license upon payment of a $1,000 initial fee.