STATE of Wisconsin EX REL. the FIRST NATIONAL BANK OF WISCONSIN RAPIDS, Wisconsin, Plaintiff

Farmers and Merchants Bank of Rudolph, Wisconsin, Plaintiff-Appellant,

v.

M & I PEOPLES BANK OF COLOMA, Wisconsin Banking Review Board, and Erich Mildenberg, Commissioner of Banking, State of Wisconsin, Defendants-Respondents.†

Supreme Court

*No. 77–515. Argued January 8, 1980.—Decided April 1, 1980.*
(Also reported in 290 N.W.2d 321.)

† Motion for reconsideration denied, with costs, on May 13, 1980. DAY, J., took no part.

For the appellant there were briefs by *Brazeau, Potter, Wefel & Nettesheim* of Wisconsin Rapids, and *Anderson, Fisher, Shannon, O'Brien & Rice* of Stevens Point, of counsel, with oral argument by *Nicholas J. Brazeau* and *John E. Shannon, Jr.*

For the respondents there was a joint brief by *Frank J. Pelisek, K. Thor Lundgren* and *Michael, Best & Friedrich* of Milwaukee, for M & I Peoples Bank, and by *Bronson C. La Follette*, attorney general, *Lowell E. Nass*, assistant attorney general, and *Robert A. Patrick*, of counsel, for the Banking Review Board and Erich Mildenberg, with oral argument by *Lowell E. Nass* and *Robert A. Patrick*.

WILLIAM G. CALLOW, J. The Farmers and Merchants Bank of Rudolph, Wisconsin (Farmers), appeals from a judgment and an order denying its request for injunctive relief and dismissing its complaint in quo warranto and, additionally, for a declaratory judgment on its merits. We affirm.

On January 17, 1973, the M & I Peoples Bank of Coloma, Wisconsin (M & I), filed an application with the Commissioner of Banking, pursuant to sec. 221.04(1)(j)1, Stats.,[1] for permission to establish a branch bank facility in the town of Rome, Adams County, Wisconsin. A field investigation was assigned to Senior Examiner Kenneth Lay and was conducted on March 1 and 2, 1973. Lay's report recommended that the application for a branch be granted.

On March 6, 1973, the Commissioner and the Banking Review Board (Board) approved M & I's branch bank application. Farmers was not notified of the application, the investigation, or the application's approval.

On April 30, 1975, Farmers, together with First National Bank of Wisconsin Rapids (First National), commenced this action. The first cause of action in quo warranto pursuant to sec. 294.04, Stats.,[2] seeks a deter-

---

[1] Sec 221.04(1)(j)1, Stats., provides that state banks shall have the power

"To establish and maintain a branch bank, upon approval by the commissioner and the banking review board, in a municipality other than that in which the home bank is located, if such municipality has no bank or branch bank at the time of application and if no bank or branch bank is located within a radius of 3 miles from the proposed site of the branch; however, such 3-mile limitation shall be computed by measuring the street or road mileage of that route which the commissioner and board find would be ordinarily and customarily traveled as the shortest distance between such bank or branch bank and the proposed site of the branch. A branch bank established under this paragraph shall be located in the same county in which the home bank is located or in a contiguous county if the location of such branch bank is no more than 25 miles from the home bank. Such branch banks shall be subject to all laws, rules and regulations applicable to banks generally. Application for the establishment of a branch bank under this paragraph shall be made to the commissioner on a form furnished by the commissioner."

[2] Section 294.04, Stats., provides:

"**When action may be brought.** (1) An action may be brought by the attorney general in the name of the state, upon his own

mination that M & I's franchise is null and void. As a second cause of action, Farmers seeks a declaratory judgment pursuant to sec. 269.56, Stats. 1973, adjudicating the rights of the parties and interpreting the statute under which M & I's application for a branch bank was granted. The following allegations were offered in sup-

information or upon the complaint of any private party, against the parties offending in the following cases:

"(a) When any person shall usurp, intrude into or unlawfully hold or exercise any public office, civil or military, or any franchise within this state, or any office in a corporation created by the authority of this state; or

"(b) When any public officer, civil or military, shall have done or suffered an act which, by the provisions of law, shall work a forfeiture of his office; or

"(c) When any association or number of persons shall act, within this state, as a corporation without being duly incorporated.

"(2) Such action may be brought in the name of the state by a private person on his own complaint when the attorney general refuses to act or when the office usurped pertains to a county, town, city, village, school district or vocational, technical and adult education district."

This suit is brought by Farmers and First National as private persons pursuant to sec. 294.04(2). The complaint alleges that the Attorney General's appearance as counsel for the Board and the Commissioner in prior actions brought by First National challenging approval of the M & I application and his inaction pursuant to a request by First National and Farmers constitute a refusal to act on their behalf. M & I's answer contains the allegation that "only subsequent to the commencement of the present action did the Attorney General declare that he was unwilling to pursue an action under Chapter 294, Wis. Stats., on plaintiffs' behalf." The Attorney General, in a separate answer for the Board and the Commissioner, does not respond to Farmers' and First National's allegation.

Appearance by the Attorney General on behalf of the defendants in an action in quo warranto sufficiently shows that an application to him to commence the action would have been futile and is equivalent to a refusal by him to act in the matter on behalf of the state. *State ex rel. Williams v. Samuelson*, 131 Wis. 499, 503, 111 N.W. 712 (1907).

port of both causes of action: (1) sec. 221.04(1)(j)1, Stats., under which M & I's application for a branch bank was granted, is unconstitutional because it fails to make adequate provision for notice to interested parties or for an opportunity for interested parties to be heard; (2) the approval of M & I's application for a branch bank is void because the statute authorizing the approval is unconstitutional; and (3) even if sec. 221.04(1)(j)1 were constitutional, M & I's application for a branch bank would be void because the location allowed by the Commissioner and the Board directly contravenes the terms of sec. 221.04(1)(j)1.

After the trial court granted the defendants' motions to dismiss First National's complaint,[3] the defendants filed motions to dismiss the complaint of Farmers for lack of standing. A hearing on these motions was held on April 15, 1976, and the trial court withheld ruling on the motions to dismiss Farmers' complaint for lack of standing, permitting Farmers to present further evidence at trial. The case was tried on June 20 and 21, 1977. Briefs were submitted after trial; and on October 11, 1977, the trial court found that Farmers had failed to establish standing to sue and held Farmers estopped to contest the constitutionality of the branch bank statute, having accepted benefits under the challenged legislation. Additionally, the trial court rejected each of Farmers' contentions on the merits.

The initial questions posed by this appeal are questions of standing—whether "a party has a sufficient

---

[3] The trial court ruled that the objections of First National, proceeding solely in quo warranto, could have been raised by First National in a Chapter 227 review and that First National's attempt to secure relief outside of that review must be denied. First National appealed, and this court affirmed the trial court's order. *State ex rel. First National Bank of Wisconsin Rapids v. M & I Peoples Bank of Coloma*, 82 Wis.2d 529, 263 N.W.2d 196 (1978).

stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." *Sierra Club v. Morton,* 405 U.S. 727, 731 (1972). Where, as here, a plaintiff has raised a constitutional challenge to legislative, executive, or administrative acts, the standing question is twofold: whether "the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action,' " *Warth v. Seldin,* 422 U.S. 490, 499 (1975), quoting *Linda R. S. v. Richard D.,* 410 U.S. 614, 617 (1973) ; and "whether the constitutional . . . provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin, supra* at 500.[4]

To meet the requirement[5] of an injury, a plaintiff must allege "such a personal stake in the outcome of the con-

---

[4] "The federal law of standing is not binding on Wisconsin, but recent federal cases are certainly persuasive as to what the rule should be." (Footnotes omitted.) *Wisconsin's Environmental Decade, Inc. v. PSC,* 69 Wis.2d 1, 11, 230 N.W.2d 243 (1975).

[5] To the extent it demands an assertion of "threatened or actual injury," *Linda R. S. v. Richard D.,* 410 U.S. 614, 617 (1973), or "injury in fact," *Data Processing Service v. Camp,* 397 U.S. 150, 152 (1970), the doctrine of standing to sue in federal courts is generally regarded as constitutionally mandated by the "cases and controversies" limitation of Article III. U.S. Const., art. III, sec. 2, cl. 1. *See: Flast v. Cohen,* 392 U.S. 83, 101 (1968) ; *Linda R. S. v. Richard D., supra* at 617; *Warth v. Seldin,* 422 U.S. 490, 498–99 (1975). In Wisconsin, the circuit courts have been granted jurisdiction "in all *matters* civil and criminal." Wis. Const., art. VII, sec. 8. (Emphasis added.) While no case can be found holding standing to be a jurisdictional prerequisite, the doctrine has generally been applied as a matter of "sound judicial policy." *Schmidt v. Local Affairs & Development Dept.,* 39 Wis.2d 46, 61, 158 N.W. 2d 306 (1968). *See also: Will of Heinemann,* 201 Wis. 484, 490, 230 N.W. 698 (1930) ; *Pedrick v. First National Bank of Ripon,* 267 Wis. 436, 441, 66 N.W.2d 154 (1954). *Cf.: State ex rel. First National Bank & Trust v. Skow,* 91 Wis.2d 773, 777 n. 1, 284 N.W. 2d 74 (1979). Additionally, our application of the federal law of standing insures that federal claims raised in Wisconsin courts can be fully litigated. *E.g., Doremus v. Board of Education,* 342 U.S. 429, 434 (1952).

troversy," *Baker v. Carr,* 369 U.S. 186, 204 (1962), as to insure that "the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution." *Flast v. Cohen,* 392 U.S. 83, 101 (1968). However, the magnitude of a plaintiff's injury is not a determinant of his standing. " 'The basic idea that comes out in numerous cases is that an identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation.' " *United States v. Students Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 689 n 14 (1973), quoting Davis, *Standing: Taxpayers and Others,* 35 U. Chi. L. Rev. 601, 613 (1968).

We conclude an injury has been shown. Although the trial court determined that Farmers had not demonstrated any injury in fact, in our view the "evidence in support of a contrary finding . . . constitute[s] the great weight and clear preponderance of the evidence," *Cogswell v. Robertshaw Controls Co.,* 87 Wis.2d 243, 249–50, 274 N.W.2d 647 (1979), and the finding of no injury must be set aside. While testimony indicated that operation of the branch would not "materially" affect Farmers, no evidence counters the assertion that at least some economic impact would occur. The defendants' expert witness testified that Farmers' potential earning loss was between $49 and $66 annually. While only a "trifle," this injury is sufficient to confer standing. However, standing depends not only on the allegation of a sufficiently personal stake or interest in the outcome of the controversy but also on a showing of a "logical nexus between the status asserted and the claim sought to be adjudicated." *Flast v. Cohen, supra* at 102; *Moedern v. McGinnis,* 70 Wis.2d 1056, 1064, 236 N.W.2d 240 (1975). For such a showing to be successfully made in this case, the due process clause must be interpreted to require that a bank be extended procedural protections whenever

government action results in an increase in competition and consequent economic loss. We cannot accept this conception of the due process guarantee.

The procedural guarantees of the due process clause apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *Board of Regents v. Roth,* 408 U.S. 564, 569 (1972). "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577. Addressing a question related to the one now presented, this court stated in *State Bank of Drummond v. Nuesse,* 13 Wis.2d 74, 79, 108 N.W.2d 283 (1961):

"It is clear that in determining claims of unconstitutional discrimination and the denial of alleged rights, a distinction must be drawn between a lawful business in which one has the right to engage and other types of business which may be carried on only as a result of legislative grace. The right to engage in banking in the state of Wisconsin is purely a matter of such legislative grace."

We conclude Farmers possesses no property right to engage in the banking business free of competitors. *Accord: First National Bank of Abbeville v. Sehrt,* 246 So. 2d 382, 384 (La. App. 1971); *Franklin National Bank v. Superintendent of Banks,* 40 Misc.2d 565, 243 N.Y.S.2d 507, 510 (1963); *Bridgeport Federal Savings & Loan Ass'n v. Federal Home Loan Bank Bd.,* 307 F.2d 580, 582 (3d Cir. 1962) *cert. denied* 371 U.S. 950 (1963). *Contra: Conestoga National Bank of Lancaster v. Patterson,* 442 Pa. 289, 275 A.2d 6, 11–13 (1971).

Therefore, we hold that Farmers does not have standing to assert the alleged constitutional infirmity of sec. 221.04(1)(j)1, Stats.

In quo warranto actions, whether the action has been brought by a proper private plaintiff is determined under a different analysis, couched in terms of injury and interest. A private person acting as relator must show that he has sustained or is in danger of sustaining injury as a result of the challenged action, and he must show a special interest. It is not sufficient that the relator has merely a general interest common to all members of the public. Because the record supports the conclusion that Farmers is threatened with at least some injury, the question presented by Farmers' appeal is whether a competitive interest suffices to permit a relator to challenge in quo warranto the acts of another corporation.

The Supreme Court has "repeatedly held that the economic injury which results from lawful competition cannot, *in and of itself,* confer standing on the injured business to question the legality of any aspect of its competitor's operations." *Hardin v. Kentucky Utilities Co.,* 390 U.S. 1, 5–6 (1968) (emphasis added). Thus, without more, a plaintiff lacks standing to sue to enjoin the ultra vires acts of a competitor. *See, e.g., Railroad Co. v. Ellerman,* 105 U.S. 166, 173–74 (1882). However, standing will be upheld when a statute indicates an intent to protect a competitive interest. In such cases, the injured competitor has standing to seek to require compliance with the statute. *Hardin v. Kentucky Utilities Co., supra* at 6–7. Such is not the case here; the requirement of sec. 221.04(1)(j)1, Stats., that a branch be no more than 25 miles from the home bank (if in a contiguous county), does not evince an intent to protect competitors.

Additionally, competitive injury will provide a basis for standing even when the law the plaintiff seeks to

enforce is in no way concerned with protecting against competitive injury if a governing statute contains explicit review provisions which might be construed as authorizing standing. In *FCC v. Sanders Radio Station,* 309 U.S. 470 (1940), the Supreme Court held that an existing broadcaster had standing to challenge a license grant to a potential rival. Expressly rejecting the argument that the broadcaster's interest in freedom from competition enjoyed statutory protection, *Id.* at 473–76, the Court found the broadcaster's competitive interest to be a basis for standing because the Communications Act provides for review at the behest of an applicant or by " 'any other person aggrieved or whose interests are adversely affected.' " *Id.* at 476, quoting Sec. 402 (b) (2) of the Communications Act of 1934. *See:* Davis, *Standing: Taxpayers and Others, supra* at 626. But absent a specific statutory provision allowing suit to be brought, an injured competitor cannot sue to enforce statutory requirements not designed to protect competitors. *Kansas City Power & Light Co. v. McKay,* 225 F.2d 924, 928–34 (D.C. Cir. 1955) *cert. denied* 350 U.S. 884.[6]

---

[6] We are not unaware of decisions which, for a variety of reasons, recognize standing to protect a competitive interest not only in the absence of a legislative purpose to protect such an interest but also in the absence of a statutory review provision conferring standing. *See, e.g.: North Arlington National Bank v. Kearny Fed. Sav. & Loan Ass'n,* 187 F.2d 564, 565 (3d Cir. 1951) ; *National Bank of Detroit v. Wayne Oakland Bank,* 252 F.2d 537, 544 (6th Cir. 1958) *cert. denied* 358 U.S. 830; *Camden Trust Company v. Gidney,* 301 F.2d 521 (D.C. Cir. 1962) *cert. denied* 369 U.S. 886 (by implication) ; *Webster Groves Trust Company v. Saxon,* 370 F.2d 381, 384, 388 (8th Cir. 1966) ; *National State Bank of Elizabeth, N. J. v. Smith,* 591 F.2d 223, 228 (3d Cir. 1979) ; *Commercial Security Bank v. Saxon,* 236 F. Supp. 457, 458 (D.C.D.C. 1964) ; *Bank of Sussex County v. Saxon,* 251 F. Supp. 132, 135 (D.N.J. 1966) ; *Marion National Bank of Marion v. Saxon,* 261 F. Supp. 373, 377 (N.D. Ind. 1966). Because of our conclusion, based on different reasoning, that Farmers has standing to sue in quo warranto, we need not discuss these cases further.

Sec. 294.04 (2), Stats., provides, insofar as is relevant to this appeal, that an action in quo warranto "may be brought in the name of the state by a private person on his own complaint when the attorney general refuses to act." We conclude this section specifically allows suit to be brought and sufficiently distinguishes those cases in which a competitor is denied standing to enjoin ultra vires activity. *See: People ex rel. Weisbrod v. Lockard,* 26 Colo. App. 439, 143 P. 273, 274 (1914). We see no more need here for a statutory purpose to protect against competitive injury than in the case where the controlling statute expressly authorizes review. However, a private person seeking to act as relator is still required to possess a "personal or peculiar interest in the subject matter which is distinct from that of the general public." *State ex rel. Schneider's Credit Jewelers, Inc. v. Brackman,* 260 S.W.2d 800, 812 (Mo. Ct. App. 1953) *transferred* 272 S.W.2d 289 (Mo. 1954). "If there is any preponderance of authority on this question, it is to the effect that only a slight interest is necessary to qualify a person to apply for leave to prosecute the action." 5 Fletcher, *Cyclopedia Corporations,* sec. 2345, 979 (rev. perm. ed. 1976). We believe a competitive interest is sufficient to confer standing to sue in quo warranto. *State ex rel. Green Bay Gas & Electric Co. v. Minahan Bldg. Co.,* 141 Wis. 400, 406, 123 N.W. 258 (1910) ; *State ex rel. City Bank & Trust Co. v. Marshall & Ilsley Bank,* 4 Wis.2d 315, 90 N.W.2d 556 (1958) (by implication). *Accord: State ex rel. Missouri Optometric Ass'n v. Schneider's Credit Jewelers,* 243 S.W.2d 125, 128 (Mo. Ct. App. 1951) ; *People ex rel. J. H. Anderson Monument Co. v. Rosehill Co.,* 3 Ill.2d 592, 122 N.E.2d 283, 285 (1954) ; *People ex rel. Chas. G. Blake Co. v. Oak Woods Cemetery Assn.,* 17 Ill.2d 64, 160 N.E.2d 759, 761 (1959).

The defendants-respondents contend that Farmers' action is barred by the doctrine of laches. Laches is an af-

firmative defense and must be raised by proper pleading. *Becker v. Becker*, 56 Wis.2d 369, 374–75, 202 N.W. 2d 688 (1972) ; *Gorski v. Gorski*, 82 Wis.2d 248, 259, 262 N.W.2d 120 (1978).[7] In the case at bar, laches was raised by M & I as a defense to Farmers' complaint in quo warranto for the first time on appeal. Accordingly, we decline to pass on the issue. The merits of Farmers' claim that M & I is without authority in law to establish and maintain its branch office must be addressed.

Sec. 221.04(1) (j)1, Stats., provides in part that "[a] branch bank established under this paragraph shall be located in the same county in which the home bank is located or in a contiguous county if the location of such branch bank is no more than 25 miles from the home bank." The heart of Farmers' position is that the 25-mile limitation refers to street or road mileage measured over the shortest route ordinarily and customarily traveled; that the distance so measured between the town of Rome branch and the M & I home bank exceeds 25 miles; and that consequently the approval of M & I's application to establish the branch is invalid.

"In construing a statute, the primary source used is the language of the statute itself. . . . When a statute is ambiguous, it is permissible to look to the legislative intent, which is to be found in the language of the statute in relation to its scope, history, context, subject matter, and object intended to be accomplished. . . . A statute is ambiguous if, looking at the language of the statute, a well informed person could have become confused." *Wisconsin Environmental Decade v. Public Service Comm.*, 81 Wis.2d 344, 350, 260 N.W.2d 712 (1978).

In this case, the language of the statute provides some guidance; sec. 221.04(1) (j)1 provides that, upon the approval of the Board and the Commissioner, a branch bank may be established in a bankless community

---

[7] Since the commencement of this action, this requirement has been given statutory recognition in sec. (Rule) 802.02(3), Stats., effective January 1, 1976.

"if no bank or branch bank is located within a radius of 3 miles from the proposed site of the branch; however, such 3-mile limitation shall be computed by measuring ent. 2A Sands, *Statutes and Statutory Construction,* sec. and customarily traveled as the shortest distance between such bank or branch bank and the proposed site of the branch."

Qualifying phrases qualify the antecedent phrase or clause unless a clear intention to the contrary is apparent. 2A Sands, *Statutes and Statutory Construction,* sec. 47.33 (4th ed. 1973). Under this rule the road mileage method of measurement expressly mentioned in sec. 221.04 (1) (j) 1 would apply only to the antecedent clause relating to a three-mile radius.

Judicial constructions of statutory distance limitations have not established any uniform rule to be applied in determining the manner in which a distance limitation is to be measured. In cases involving statutes or ordinances providing that the liquor business may not be licensed or carried on within a specified distance of certain institutions such as churches or schools, the courts have usually taken the view that the measurement should be along the shortest straight line connecting the two, that is, "as the crow flies" without regard to intervening obstacles.[8] However, in construing statutes or rules which allow the deposition of a witness to be used if the court finds that the witness is at greater distance than a prescribed limit from the place of trial or hearing, the courts have generally held that the distance is to be measured along the ordinary routes of travel.[9] The differing approaches, we believe, reflect differences in

[8] *See: Commonwealth v. Jones,* 142 Mass. 573, 576, 8 N.E. 603 (1886); *Woodring v. Nolan,* 135 N.W. 567 (Iowa 1912); *Board of Trustees of Leland Stanford Jr. Univ. v. State Board of Equalization,* 1 Cal.2d 784, 786, 37 P.2d 84 (1934); Annot., 4 A.L.R.3d 1250 (1965).

[9] *See:* Annot., 94 A.L.R.2d 1172, sec. 5 (1964).

legislative policy regarding the underlying conduct. In the case at bar, the statutory language alone is not determinative, and legislative intent must be consulted.

■ Sec. 221.04(1)(j)1, Stats., was enacted into law by Chapter 253, sec. 2, Laws of 1967 (1967 Assembly Bill 123). As originally introduced, the bill did not refer to any specific method of measuring mileage. Senate Amendment 3 added the road mileage method of measurement to apply to the three-mile limit. Although Farmers argues that no such modification was needed with respect to the 25-mile limit, for the three-mile limitation was expressed as a "radius" while the 25-mile limitation was not, the stronger argument favors the defendants-respondents' position that the 25-mile limitation is to be measured on a straight-line basis. We conclude the correct interpretation of sec. 221.04(1)(j)1 requires that the 25-mile limitation be measured by straight-line distance and not road mileage.

At trial, proof was limited by the court to the issue of whether "there was before the Commissioner of Banking and the Banking Review Board reasonable evidence from which they could conclude" that "the branch site is within 25 miles of the home bank." Farmers' objections to the limitation were voiced and noted on the record. Farmers offered the testimony of a land surveyor and a State Division of Highways engineering technician to show that the road mileage between M & I and the branch exceeded 25 miles. The witnesses' testimony was offered as an offer of proof as evidence excluded by the pretrial order and as evidence relating to the reasonableness of the Board's actions. The trial court ruled that the evidence would be received "solely as it relates to the reasonableness of the actions of the Banking Review Board." Similarly, Exhibits 3, 4, and 5, which relate to the sher-

iff's measurement utilized in the application, were "received for the sole purpose of insofar as they relate to the reasonableness of the actions of the Board." [sic] These rulings were consistent with the trial court's perception of the action as a "[j]udicial review of the administration of the branch bank statute," "limited to a determination of whether or not the Commissioner and the Banking Review Board were arbitrary and capricious in concluding that statutory requirements had been met." However, these rulings are inconsistent with the nature of an action in quo warranto.

Quo warranto proceedings are civil actions, sec. 294.01, Stats., and the usual rules as to admissibility and competency of the evidence apply and govern. 9 *Wisconsin Pleading and Practice,* sec. 87.29 (3d ed. 1955) ; 65 Am. Jur.2d *Quo Warranto* sec. 107 (2d ed. 1972). When challenging the right to exercise a corporate franchise and where the exercise of the franchise is supported by official authority regular on its face, the issue is whether this official authority was improperly given. *Id.* at sec. 106. When quo warranto is used to try title to an elective office, the issue is whether the defendant received a majority of the votes which the canvassers of the election had a right to count. *State ex rel. Holden v. Tierney,* 23 Wis. 430, 433 (1868). Trial de novo is proper; the certificates of the vote canvassers are not conclusive. *State ex rel. Burnett v. Pierpont,* 29 Wis. 608, 610 (1872). Similarly, when quo warranto is used to test a corporate franchise, the inquiry should not end when it appears that official authority could have been properly exercised; the issue is whether it indeed was so exercised and whether the franchise was properly granted.

None of Farmers' proffered evidence shows that the branch and M & I are more than 25 air miles apart. Instead, Farmers' witnesses testified that the road mileage

was measured at 25.32 miles, southbound, and 25.307 miles, northbound. One of the witnesses testified that he had measured a slightly less direct route than did the Adams County Sheriff Department, whose report was submitted to the Board. No evidence was ever offered to show that the branch was more than 25 air miles from M & I.

Although the trial court had limited the issue to a review of the reasonableness of the conclusion of the Board and the Commissioner that the 25-mile test had been met, the trial court reached and rejected Farmers' claim that *in fact* the 25-mile test had not been met: "The plaintiff has failed to meet its burden of proof in its attempt to show that the M & I Lake Branch is located more than twenty-five miles from its home bank." Thus the trial court's earlier rulings limiting the use to which the evidence could be put resulted in no prejudice to Farmers. Additionally, as plaintiff, Farmers carries the burden to prove that the branch bank and the home bank are more than 25 air miles apart; Farmers neither introduced nor attempted to introduce any such evidence and should not be allowed a second trial in which to do so merely because it misconstrued the provisions of sec. 221.04(1)(j)1, Stats. Therefore, the trial court's judgment and order dismissing Farmers' action in quo warranto are affirmed.

*By the Court.*—Judgment and order affirmed.

DAY, J., took no part.