WASTE MANAGEMENT OF WISCONSIN, INC., a
Wisconsin corporation, Petitioner-Appellant-
Petitioner,

v.

State of Wisconsin DEPARTMENT OF NATURAL
RESOURCES, Respondent,

TROY AREA LANDFILL, INC., a Wisconsin
corporation, Village of East Troy, a municipal
corporation, James D. Hough, Maxine M.
Hough, Vivian D. Conley, Ranson S.
Blanchard, Adrienne L. Blanchard, Joe Lawlor
and Marie Lawlor, a/k/a Local Property
Owners Group, Interested Parties.

TOWN OF EAST TROY, a municipal corporation,
Village of East Troy, a municipal corporation,
James D. Hough, Maxine M. Hough, Vivian
D. Conley, Ranson S. Blanchard, Adrienne L.
Blanchard, Joe Lawlor and Marie Lawlor,
a/k/a Local Property Owners Group,
Petitioners,

v.

State of Wisconsin DEPARTMENT OF NATURAL
RESOURCES, and Bureau of Solid Waste
Management, Respondents.

Supreme Court

*No. 85–1486. Argued April 25, 1988.—Decided June 16, 1988.*

(Also reported in 424 N.W.2d 685.)

For the petitioner-appellant-petitioner there were briefs by *John D. Finerty, William S. Roush, Jr.,* and *Friebert, Finerty and St. John, S.C.,* Milwaukee and oral argument by *William S. Roush, Jr.*

For the respondent the cause was argued by *Mary Ann Sumi,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

HEFFERNAN, CHIEF JUSTICE. This case comes to us on petition of Waste Management of Wisconsin, Inc., to review an unpublished decision of the court of appeals.[1] In that decision, the court of appeals affirmed the order of the circuit court for Walworth county, James L. Carlson, circuit judge,

---

[1] *Waste Management of Wisconsin, Inc. v. State of Wisconsin Department of Natural Resources,* 139 Wis. 2d 855, 407 N.W.2d 566 (Ct. App. 1987, unpublished decision).

dismissing Waste Management from the action on the ground that Waste Management had no standing to contest a Department of Natural Resources (DNR) determination of need which authorized an economic competitor, Troy Area Landfill, Inc. (Troy), to open and operate a landfill facility. We affirm the decision of the court of appeals.

The case arose in 1982, when Troy applied to the DNR for approval to construct a landfill in the Village of East Troy. The DNR, acting under the procedures set forth in ch. 144, Stats., made a determination of feasibility and of need for the site. As part of these procedures, the DNR considered petitions brought by the Town of East Troy, the Village of East Troy, a Local Property Owners Group, and Walworth county. The DNR held a contested case hearing on the determination of feasibility in 1983 and, in 1984, on the determination of need. Waste Management was added as an interested party for the need hearing.[2]

In the need hearing, Waste Management argued that, for Troy to meet its projected loading target of 600 tons of solid waste a day, it would have to accept trash from an area already being serviced by Waste Management's landfills, which would result in trash being diverted to Troy from the Waste Management sites, thus causing economic harm to Waste Management. Waste Management also argued that, to attract disposal of trash over such a long distance (more than twenty miles), Troy would have to charge unrealistically low gate fees, a situation which could not be

---

[2]Under Wisconsin law, it is clear that, just because a party has requested and been granted an administrative hearing, the party does not obtain thereby the standing to challenge the resulting administrative decision. *Fox v. Department of Health and Social Services,* 112 Wis. 2d 514, 526, 334 N.W.2d 532 (1983).

maintained for long. Thus, Waste Management's argument was that Troy would be unable to meet its projected loading target of 600 tons per day.[3]

The result of these hearings was that on April 4, 1985, the DNR issued a determination both that the site was feasible and that there was a need for the site. The determination considered Waste Management's concern that Troy might not be able to sustain the low gate fees it projected, but, nevertheless, the DNR allowed the site development to proceed.

On May 1, 1985, the Town of East Troy, the Village of East Troy, the Local Property Owners Group, and Walworth county brought a circuit court action to review this determination. This action for review in the Walworth county circuit court is still pending. On May 6, 1985, Waste Management brought a separate action under ch. 227, Stats., in the Milwaukee county circuit court. Under sec. 227.16, Stats. (1983–84), that action was transferred to Walworth county and consolidated with the other petitioners' action. The controversy underlying this review arose when the circuit court for Walworth county, on the DNR's motion, dismissed Waste Management from the action for lack of standing.

Although standing cases have the potential to be both complex and difficult to resolve, this case is neither. No constitutional standing issue is raised here. Instead, the issue presented for our review is the statutory question of whether, under secs. 227.15 and

---

[3]We note in passing that these two arguments are contradictory. If Troy could not maintain its low gate fees, it would not long be able to lure trash from Waste Management's sites and, thus, Waste Management would not suffer economic harm. We presume these are intended to be alternative, rather than complementary, arguments.

227.16(1), Stats. (1983–84),[4] sec. 144.44(2)(nm), operates to grant standing to Waste Management to maintain a suit challenging the DNR's affirmative determination of need for Waste Management's economic competitor, East Troy Landfill.

Waste Management's position in the circuit court, in the court of appeals, and now in this court, is that it has standing to challenge the DNR's determination of need for the East Troy landfill because this landfill will siphon business from Waste Management's already existing landfill facilities, thus causing Waste Management an economic harm. In this court, Waste Management also contends that it should have standing because its interests are within the protected zone of environmental interests regulated by ch. 144, Stats.

In the past, we have stated a two-part test for determining whether a party has standing under secs. 227.15 and 227.16, Stats. (1983–84) (now secs. 227.52 and 227.53). In *Wisconsin's Environmental Decade, Inc. v. Public Service Comm.*, 69 Wis. 2d 1, 230 N.W.2d 243 (1975) (*WED I*), this court stated:

---

[4]Sec. 227.15, Stats. (1983–84) (now sec. 227.52, Stats. (1985–86)), reads in relevant part:

> "**Judicial review; decisions reviewable.** Administrative decisions which adversely affect the substantial interests of any person, whether by action or inaction, whether affirmative or negative in form, are subject to review as provided in this chapter . . . except as otherwise provided by law."

Sec. 227.16(1), Stats. (now sec. 227.53(1), Stats. (1985–86)), reads in relevant part:

> "**Parties and proceedings for review.** (1) Except as otherwise specifically provided by law, any person aggrieved by a decision specified in s. 227.15 [now sec. 227.52] shall be entitled to judicial review thereof as provided in this chapter."

"The Wisconsin rule of standing envisions a two-step analysis conceptually similar to the analysis required by the federal rule. The first step under the Wisconsin rule is to ascertain whether the decision of the agency directly causes injury to the interest of the petitioner. The second step is to determine whether the interest asserted is recognized by law. This approach is similar to the two-pronged standing analysis outlined by the United States Supreme Court ... as follows: (1) Does the challenged action cause the petitioner injury in fact? and (2) is the interest allegedly injured arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question?" *WED I* at 10.

This two-step analysis required that, to have standing, the petitioner demonstrate both that it sustained the alleged injury due to the agency decision, and that the injury is to an interest which the law recognizes or seeks to regulate or protect. In this case, the DNR's determination of need was a necessary condition precedent for Troy's operation. Therefore, Waste Management's injury, if any, stemmed directly from the DNR's decision to allow Troy to proceed with its landfill, and the first step of the two-part standing analysis is satisfied.

Turning first to Waste Management's economic argument, Waste Management argues that, because it will suffer an economic hardship, it meets the requirements under secs. 227.52 and 227.53, Stats., as a "person aggrieved." In support of this contention, it relies on *State ex rel. the First National Bank of Wisconsin Rapids v. M & I Peoples Bank of Coloma,* 95 Wis. 2d 303, 290 N.W.2d 321 (1980), in which this court held that, under the *quo warranto* statute (now sec.

784.04), only a "slight interest" was necessary to confer standing. 95 Wis. 2d at 313. Arguing further that this court has incorporated the *quo warranto* standard into ch. 227 proceedings, Waste Management concludes that only a slight showing of injury is necessary to qualify it as a person aggrieved.

This argument misses the mark. First, and most obviously, this argument goes to the question of degree of injury necessary to confer standing. As such, it goes to the first part of the two-part standing analysis: Whether the party suffered an "injury" as a result of the agency decision. In this case, however, the dispositive question arises under the second part of the two-part standing analysis: Whether the injury is of a type recognized, regulated, or sought to be protected by the challenged law. See *WED I,* 69 Wis. 2d at 10. Thus, even if we were to agree that a slight injury, as defined in the *quo warranto* context, were sufficient to confer standing under ch. 227 as an injury, this is irrelevant to the question of whether such injury is of the type protected by the law challenged in this case (*i.e.,* the substantive provisions of sec. 144.44(2)(nm)). Waste Management mistakenly advances a doctrine directed at magnitude of injury in an attempt to meet a requirement directed at nature of injury.

Because this argument is mistaken, we need not reach the second portion of this argument, and accordingly do not address the contention that this court's holding in *First National Bank,* made in the *quo warranto* context, should be applicable to the ch. 227 administrative procedure.

Turning to the dispositive question, as stated above under the two-step analysis employed in these cases, the controlling issue is whether the economic

injury which Waste Management alleges it will suffer is an injury to an interest of a type recognized, regulated, or sought to be protected by sec. 144.44(2)(nm), Stats.

To apply this second part of the two-step standing analysis—whether the injury is to an interest which is protected by the law—we must examine sec. 144.44(2)(nm), Stats.,[5] the law the DNR was applying in making the determination of need. This subsection sets forth the matters which the DNR must consider before determining that there is a need for the new proposed site. The legislative mandate which this scheme embodies is that determinations of need should not be made in the absence of findings of relevant facts. Toward this end, the DNR is required to examine already existing facilities.

In its determination of need for the East Troy landfill, the DNR demonstrated its understanding of

---

[5]Sec. 144.44(2)(nm), Stats., reads in relevant part:

"DETERMINATION OF NEED; ISSUES CONSIDERED. A feasibility report shall contain an evaluation to justify the need for the proposed facility .... The department shall consider the following issues in evaluating the need for the proposed facility:

"1. An approximate service area for the proposed facility which takes into account the economics of waste management, transportation and disposal.

"2. The quantity of waste suitable for disposal at the proposed facility generated within the anticipated service area.

"3. The design capacity of the following facilities located within the anticipated service area of the proposed facility:

"a. Approved facilities, as defined under s. 144.441(2)(a)1, including the potential for expansion of those facilities on contiguous property already owned or controlled by the applicant.

"b. Nonapproved facilities, as defined under s. 144.442(1)(c), which are environmentally sound. ...

"c. Other proposed facilities for which feasibility reports are submitted and determined to be complete by the department."

how this statute operates. The DNR examined the capacity of nine other existing waste facilities, including four operated by Waste Management. It concluded that, despite the presence of these other facilities, unless additional solid waste disposal capacity was approved, there would be a substantial shortage of approved landfill capacity within the area Troy intended to service unless the Troy facility was allowed to proceed. The report concluded that the proposed Troy Area landfill was needed to alleviate the projected shortage of approved landfill capacity within the anticipated service area of Washington, Ozaukee, Waukesha, Jefferson, Milwaukee, Walworth, Racine, and Kenosha counties. See, *In the Matter of the Need for the Proposed Troy Area Landfill in the Town of East Troy, Walworth County,* No. 1H–83–14 and 1H–84–11 (Department of Natural Resources, Apr. 4, 1985 at 3–5). Thus, it is clear not only that the DNR conformed to the legislative mandate not to make need determinations without considering existing landfills, but the method of the determination of need also demonstrates the nature of the DNR's concern with the environmental problem of waste disposal.

The nature of the statute, as well as the nature of the determination of need, make clear that the interest protected, recognized, or regulated by the law is an environmental interest. In this case, the environmental issue is the appropriate ultimate disposition of solid waste in a densely populated eight-county corner of the state.

■

In this context, an argument for standing based on alleged harm to an economic interest must fail. The statute at issue here, sec. 144.44(2)(nm), Stats., does not recognize, nor does it attempt to regulate or

protect an economic interest. For this reason, an alleged harm to Waste Management's economic interest does not satisfy the second part of the two-step analysis we set forth in *WED I.*

As we noted in *WED I,* 69 Wis. 2d at 10, the Wisconsin standing analysis is conceptually similar to the federal analysis. Under the federal standing cases, a doctrine of standing to appeal administrative rulings to judicial review has been developed. This doctrine, particularly persuasive under the applicable administrative standing statute in this case, also reinforces our conclusion that Waste Management has no standing here.

In *Block v. Community Nutrition Institute,* 467 U.S. 340 (1984), the Supreme Court addressed the question of whether consumers, who were adversely affected by a scheme whereby under certain conditions milk distributors would have to pay dairy farmers more for certain qualities of milk, had standing to seek judicial review of Department of Agriculture milk marketing orders mandating such payments. The Court denied standing on the ground that the lack of standing for consumers at the administrative level "strongly suggests that Congress intended a similar restriction of judicial review of market orders" (*id.* at 347) and also on the ground that the whole structure of the statute indicated that consumers ought not to be given standing because granting standing would upset the "complex" structure of the regulatory scheme. *Id.* at 348.

A similar rationale is persuasive in this case. Standing at the administrative level in waste disposal siting cases is controlled by sec. 144.44(2)(m), Stats. That section provides that a feasibility and need determination may be treated as a contested case at

the administrative level if a request for such treatment is made within a specified time period. Standing to make such a request is statutorily limited to "any county, city, village or town, the applicant or any 6 or more persons." As in *Community Nutrition,* the legislature's failure to list economic competitors bespeaks an intent to similarly restrict standing.

We stress that this reasoning is particularly persuasive in this case not because we are bound, as are the federal courts, by a specific legislative jurisdictional grant of power, but because the structure of the standing statute in this case evidences a clear statutory intent to restrict standing to those, such as neighbors and local governments, who would suffer an environmental, as opposed to an economic, harm. Thus, the restrictions on standing at the administrative level are persuasive because they emphasize again the environmental nature of the interest recognized, regulated, and protected by the challenged law.

Waste Management advances another argument, ostensibly based on environmental grounds. According to Waste Management, if the Troy landfill project is allowed to move forward, Waste Management will not be able to meet its own obligations under its plan of operation for its existing sites to close those sites within the legally specified fifteen-year time limit. This arguably will ensue because Waste Management's sites will not have received enough trash to fill them, as the required trash will have been diverted to Troy instead. In advancing this argument, Waste Management seeks standing because this interest, allegedly an environmental one, would be of the type to receive recognition under ch. 144, Stats.

This argument, like the previous one, misses the mark. The environmental concern which requires site

closing within fifteen years may also be satisfied under the DNR's guidelines by an early closing, if necessary. As the court of appeals in this case said: "The *potential* unavailability of adequate solid waste which [Waste Management] alleges will prevent it from complying with DNR regulations regarding operation and closure will not necessarily lead to the environmental injury anticipated by [Waste Management]." *Waste Management, Inc. v. Department of Natural Resources,* 139 Wis. 2d 855, 407 N.W.2d 566 (Ct. App. 1987) slip opinion at 8 (unpublished opinion).

Further, as we stated in another case involving these same parties, Waste Management's interest in its original plan of operation for a landfill site is only a "conditional interest." *Waste Management of Wisconsin v. Department of Natural Resources,* 128 Wis. 2d 59, 76, 381 N.W.2d 318 (1986). Although the question in that case arose in a due process context, the observations which we made there about the conditional nature of operating plans make clear that there is no absolute right to operate a landfill site in the manner originally conceived by the operator and approved by the DNR.

Thus, the mere possibility, as advanced by Waste Management,[6] that Troy will divert to its site sufficient trash to cause Waste Management to have to close its sites early, also does not confer on Waste Management standing under sec. 144.44(2)(nm), Stats., because this is not an environmental interest, but is instead an economic interest. Further, no argument can be raised that Waste Management's original plan

---

[6]Advanced, we might add, in the alternative, and perhaps as a hypothetical. See footnote 3, *supra.*

511

operates to require it to obtain a certain amount of fill, as the plan of operation is only "conditional."

The last argument we address is a statutory interpretation argument advanced by Waste Management. Waste Management contends that it is granted standing under the plain language of sec. 144.44(2)(nm)3a, Stats. That subsection provides that the DNR must consider the capacity of already existing facilities "including the potential for expansion of those facilities on contiguous property already owned or controlled by the applicant." Waste Management argues that, because it happened to have an application for expansion of its own existing sites before the DNR at the time when the DNR was considering its determination of feasibility and need for the Troy Area Landfill, it was an "applicant" under the meaning of this statute.

This argument must be rejected as a tortured and specious interpretation of the word, "applicant." First, the legislature could not have intended to confer standing on only those economic competitors who just happened to have an application for expansion before the DNR. Second, this interpretation of the word, "applicant," is contrary to that word's meaning throughout the rest of the chapter. As used in ch. 144, Stats.,[7] that word means the "applicant" for the new landfill license under consideration. This argument for standing must also fail.

[7]See, e.g., secs. 144.44(1m)(b), (bn), (c), (d), 144.44(2)(b)2, (e), (f), (f)4, (g), (h), (i), (m). All of these subsections make clear from their context that "applicant" means the applicant for the new license being considered by the DNR, and not other applicants for other, expansion licenses to already existing sites.

Because the injury allegedly suffered by Waste Management is an economic injury, Waste Management has no standing to contest the DNR's determination in this case. The challenged statute protects only environmental issues; hence, under the second step of the *WED I* analysis, the injury complained of is not an injury to an interest of a type recognized, protected, or regulated by the challenged statute. In addition, Waste Management has no statutory standing as an "applicant." For these reasons, Waste Management's assertion of standing was properly denied.

*By the Court.*—Decision affirmed.