# MCI TELECOMMUNICATIONS CORPORATION,
## Petitioner-Appellant,

### v.

# PUBLIC SERVICE COMMISSION OF WISCONSIN,
## Respondent.

Court of Appeals

*Nos. 90-0828, 90-1640. Oral argument March 7, 1991.—Decided August 22, 1991.*

(Also reported in 476 N.W.2d 575.)

For the petitioner-appellant the cause was submitted on the briefs of *Joyce Gothelf* of Chicago, Illinois and *Niles Berman* of *Wheeler, Van Sickle & Anderson, S.C.,* of Madison and orally argued by *Niles Berman.*

For the respondent the cause was submitted on the briefs of *Steven M. Schur, Steven A. Levine,* and *Natalie Smith* of *Public Service Commission of Wisconsin* of Madison and orally argued by *Steven A. Levine.*

Brief of amicus curiae was filed by *Larry J. Martin* and *Erica Eisinger* of *Quarles & Brady* of Milwaukee and *Rick D. Bailey, O. Carey Epps, Larry J. Salustro* of *AT&T* of Chicago, Illinois on behalf of *AT&T Communications of Wisconsin, Inc.* and orally argued by *Erica Eisinger* and *Rick D. Bailey.*

Briefs of *Michael I. Paulson* of Milwaukee on behalf of *Wisconsin Bell, Inc.* and orally argued by *Michael I. Paulson.*

Brief of *David E. Hightower* of Sun Prairie on behalf of *GTE North Incorporated* and orally argued by *David E. Hightower.*

Before Eich, C.J., Dykman and Sundby, JJ.

DYKMAN, J. This is a consolidation of four judicial reviews of decisions of the Public Service Commission. Three of the reviews were consolidated in the trial court before Judge Moria Krueger, and one was heard by Judge Mark Frankel. Two issues are presented. First, whether MCI Telecommunications Corporation has standing to contest the PSC's denial of its request for a hearing on three tariffs submitted by Wisconsin Bell, Inc., and one tariff submitted by GTE North, Incorporated. Second, whether MCI has standing to object to PSC decisions approving the four tariffs. Because we conclude that MCI lacks standing in both respects, we affirm.

## BACKGROUND

As a result of the federal government's antitrust action against American Telephone and Telegraph Company, AT&T was required to divest its Bell operating companies, including Wisconsin Bell. The United States was then divided into 161 local access and transport areas. (LATAs). The Bell operating companies, including Wisconsin Bell, were restricted to providing local service and long distance service within a single LATA. Long distance service between LATAs was restricted to interexchange carriers. MCI and AT&T are interexchange carriers. Competition between interexchange carriers was intended and has occurred.

In 1986, the Wisconsin Legislature enacted secs. 196.194 and 196.195, Stats., which partially deregulated telecommunications services, and permitted telecommunication utilities to enter into individual contracts with individual customers. *See* secs. 34 and 35, 1985 Wis. Act 297.

Though in theory the operating companies and the interexchange carriers would not compete, the Public Service Commission determined that interexchange services do affect intralata long distance services. Thus, after three interexchange carriers which operated in Wisconsin Bell's territory were given PSC approval to provide services in competition with Wisconsin Bell's intralata long distance services, Wisconsin Bell and GTE North applied for tariffs giving them authority in their territory to enter into contracts in competition with those offered by the three interexchange carriers. MCI asked that the PSC hold a hearing on the applications, and that it reject the proposed tariffs.

The PSC denied MCI's request that it hold a hearing on Wisconsin Bell and GTE North's proposed tariffs, and then approved those tariffs. MCI filed petitions for judicial review of the four orders approving the proposed tariffs. Both circuit courts to which the reviews were assigned concluded that MCI did not have standing to challenge the PSC action, and therefore dismissed the petitions for review. These appeals followed.

## STANDING

The supreme court discussed standing to contest an administrative decision in *Waste Management of Wisconsin, Inc. v. DNR,* 144 Wis. 2d 499, 424 N.W.2d 685 (1988). Wisconsin uses a two-step test. First, the petitioner must demonstrate that it sustained an injury directly caused by the agency decision. Second, the injury must be to an interest protected or regulated by the law in question. *Waste Management,* 144 Wis. 2d at 505, 424 N.W.2d at 687. Thus, we examine a specific statute to determine standing rather than consider all interests of the petitioner. We conduct this inquiry with

no deference to the decision of the circuit court. *Davis v. Psychology Examining Bd.,* 146 Wis. 2d 595, 599, 431 N.W.2d 730, 732 (Ct. App. 1988).

## DECISION

MCI challenges both the PSC's refusal to hold hearings on the four applications, and the lawfulness of the PSC's approval of the tariffs. It asserts that the trial courts did not consider its challenge to the hearing denials and decided the cases on MCI's attack on the lawfulness of the tariff approvals. In applying the two-part test for standing, we will consider both of MCI's assertions.

MCI is a customer of both GTE North and Wisconsin Bell. It predicates standing on this basis, arguing that because Wisconsin Bell was involved in an experimental program which permitted it to share with ratepayers its excess earnings, the excess earnings would be depressed because Wisconsin Bell would enter noncompensatory contracts with large telephone users. Thus, the rebate to which MCI would have been entitled would be reduced. MCI makes a similar argument with respect to GTE North, though GTE North did not have an experimental program.

The PSC's failure to hold a hearing on MCI's request would only injure MCI if two things occurred. First, we must assume that as a result of a hearing, the PSC would have denied Wisconsin Bell's request to file its tariffs. There is no evidence that this would have occurred. Second, there is no evidence that Wisconsin Bell has used its new tariffs to enter into any contracts, let alone any noncompensatory contracts.

Nor is MCI's interest as a customer within the interests to be protected by sec. 196.194, Stats., at least

494

at the stage where the PSC has approved the filing of a tariff. That statute sets out the procedure for entry of individual contracts, and nowhere does it suggest that a hearing be had at this initial stage. The suggestion is just the opposite. An investigation is had only after a contract is entered, and interested persons such as MCI are notified of the contract's entry.[1] The PSC then determines whether the contract is compensatory. MCI's alleged interest is not arguably within the zone of interests to be protected by sec. 196.194, Stats. We conclude that MCI's status as a customer of Wisconsin Bell does not give it standing to complain of the PSC's failure to hold a hearing on Wisconsin Bell and GTE North's applications for tariffs.

██

MCI's attack on the PSC's approval of Wisconsin Bell and GTE North's tariffs fares no better. Again, MCI would be injured only if it showed that contracts had been entered under the new tariffs, and it has made no such showing. Also, as we have discussed, sec. 196.194, Stats., does not put MCI in the zone of risk of a wrongful approval of a tariff. No one is in that zone of risk

---

[1]Section 196.194, Stats., provides in part:

Within 20 days after a contract authorized under this section or an amendment to such a contract has been executed, the telecommunications utility shall submit the contract to the commission. The commission shall give notice to any person, upon request, that a contract authorized under this section has been received by the commission. The notice shall identify the telecommunications utility that has entered into the contract. Within 6 months after receiving substantial evidence that a contract may be noncompensatory, or upon its own motion, the commission shall investigate and determine whether the contract is compensatory. If the commission determines that the contract is noncompensatory, the commission may make appropriate adjustments in the rates or tariffs of the telecommunications utility that has entered into the contract, in addition to other remedies under this chapter.

because that statute contemplates inquiry into contracts after they are entered, not after they have been authorized.

MCI also asserts that it has standing to challenge the tariff approvals and failure to hold hearings because it is a competitor of Wisconsin Bell and GTE North.

There is no property right to engage in a business free of competitors. *State ex rel. First Nat'l Bank of Wisconsin Rapids v. M&I Peoples Bank of Coloma,* 95 Wis. 2d 303, 310-11, 290 N.W.2d 321, 326-27 (1980). However, if a statute indicates an intent to protect a competitive interest, an injured competitor has standing to seek to require compliance with the statute. *Id.* at 311, 290 N.W.2d at 327. Thus, we must consider whether sec. 196.194, Stats., shows an intent to protect competitors. Section 1 of 1985 Wis. Act 297, enacting sec. 196.194, declares the legislative intent of that act:

> The legislature finds that the telecommunications industry is in a state of transition, providing opportunities for new sources of competition, and that changes in technology, public policy and federal regulatory and judicial initiatives are revolutionizing the industry. It is the intent of the legislature that:
>
> (1) Universal telecommunications services continue to be available to the people of this state at just and reasonable rates and be of sufficient quantity, quality and reliability to meet the public interest.
>
> (2) The public service commission have flexibility to deal with the current period of transition in the industry, while keeping as its main purpose the protection of the interests of ratepayers of public utilities offering regulated telecommunications services.
>
> (3) The public service commission shall, when consistent with the protection of ratepayers and with

other public interest goals established by the legislature, rely on competition rather than regulation to determine the variety, quality and price of telecommunications services.

(4) The public service commission ensure that, in general, users of regulated telecommunications services and facilities pay only reasonable and just charges for such services and facilities and that such charges do not include costs associated with the competitive activities of telecommunications utilities.

(5) Partial deregulation be a regulatory system to facilitate competition where it may exist. When the market for a telecommunications service is fully competitive, the level of regulation imposed by the public service commission upon all similarly situated providers of that service shall be equal.

This statement of legislative intent shows a legislative concern with protecting ratepayers, not competitors. Though MCI focuses on the portion of sec. 1, 1985 Wis. Act 297, which states: "It is the intent of the legislature that . . . [p]artial deregulation be a regulatory system to facilitate competition where it may exist," this language does not evince an intent to protect competitors. This language recognizes only that less governmental regulation promotes competition. Total competition offers no protection to competitors, and in fact assumes that those who compete less efficiently will fail. Nor does an examination of sec. 196.194, Stats., suggest an intent to protect competitors. Indeed, as we have previously noted, that statute provides for contracts to be entered as a result of filed tariffs, with inquiry occurring only after the contracts are entered. Thus, regardless of whether MCI has sustained an injury by the PSC's actions, the assumed injury is not to an interest protected or regulated by sec. 196.194.

Under *Waste Management,* MCI lacks standing to contest the PSC's decisions to deny MCI a hearing and to approve Wisconsin Bell and GTE North's tariffs. Because of MCI's lack of standing, we affirm the trial courts' orders.

*By the Court.*—Orders affirmed.