STATE of Wisconsin PUBLIC INTERVENOR, Petitioner-Appellant,

v.

Wisconsin DEPARTMENT OF NATURAL RESOURCES, Respondent-Respondent-Petitioner,

BROWN COUNTY and the Brown County Board of Harbor Commissioners, Intervenors-Respondents-Petitioners.

Supreme Court

*No. 91–2031. Oral argument March 29, 1994.—Decided June 6, 1994.*

(Also reported in 515 N.W.2d 897.)

For the petitioner-appellant-respondent there was a brief by *Thomas J. Dawson,* Wisconsin public intervenor, Madison and oral argument by *Thomas J. Dawson.*

For the respondent-respondent-petitioner the cause was argued by *Steven B. Wickland,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

For the intervenors-respondents-petitioners there were briefs by *Winston A. Ostrow* and *Godfrey & Kahn, S.C.,* Green Bay and oral argument by *Winston A. Ostrow.*

JANINE P. GESKE, J.   This is a review of a published opinion of the court of appeals, *State Public Intervenor v. DNR,* 177 Wis. 2d 666, 503 N.W.2d 305 (Ct. App. 1993), which reversed judgments of the circuit court for Dane County, George Northrup, Circuit Judge. The circuit court considered two consolidated actions brought by the State of Wisconsin Public Intervenor, which challenged administrative proceedings under Wis. Admin. Code sec. NR 2.20 [hereinafter sec. NR——].[1] Pursuant to sec. NR 2.20, the secretary of

---

[1] Wis. Admin. Code sec. NR 2.20 provides as follows:

**NR 2.20 Review of contested case decision.** (1)   FILING. Any party to a contested case who is adversely affected by a final decision rendered after a contested case hearing on the matter may, within 20 days after entry of the decision, file a written

the Department of Natural Resources (DNR secretary) reviewed the decision of the hearing examiner for the Wisconsin Department of Administration, Division of Hearings and Appeals (hearing examiner). The hearing examiner had reversed a Wisconsin Department of Natural Resources (DNR) decision to grant water quality certification for a confined disposal facility (CDF) in the bay of Green Bay. The DNR secretary, though affirming the decision of the hearing examiner, did so

petition for review by the secretary or the secretary's designee. The petition shall specify in detail the grounds for the review, the relief which petitioner seeks and citation to supporting authorities which petitioner feels aids petitioner's case. The secretary may not delegate the review to anyone who has had prior involvement in either the hearing or decision-making process.

(2) SERVICE. The petition for review under this section shall be served either personally or by registered or certified mail upon the secretary, the hearing examiner and upon all parties to the action.

(3) DECISION. Within 14 days of the receipt of the petition, the secretary shall decide whether or not to grant the requested review. If the secretary decides to grant the review, the secretary may order the filing of briefs, presentation of oral argument, or a rehearing of all or part of the evidence presented at the original public hearing (or any combination thereof).

(4) APPEAL. A petition for review pursuant to this section shall not be a prerequisite for appeal or review under ss. 227.52 to 227.53, Stats.

(5) SUSPENSION OF ORDERS. The filing of a petition for review under this section does not suspend or delay the effective date of an order, and the order shall take effect on the date of the order unless another date is set by the department or the hearing examiner, and shall continue in effect unless provisions of the order are specifically suspended or delayed by the secretary in writing. Petition for suspension of the effective date of an order shall be clearly specified in the petition for review under this section.

(6) EFFECT ON JUDICIAL REVIEW. An action pending under this section may not in any manner affect or extend the time limits for filing actions in circuit court for review under ss. 227.52 and 227.53, Stats.

on narrower grounds. The circuit court dismissed one of the actions as moot. The court also dismissed the second action because the public intervenor was the prevailing party with respect to the DNR secretary's final decision. As a result, the public intervenor was not an "aggrieved" party within the meaning of secs. 227.01(9) and 227.53(1), Stats.[2] The circuit court then concluded that sec. NR 2.20 was a valid, statutorily authorized and constitutional rule and that the DNR secretary's actions under it in this case were proper.

On appeal, the public intervenor challenged the authority of the DNR secretary to review the hearing examiner's decision. A majority of the court of appeals (Eich, C.J., dissenting) agreed and concluded that sec. NR 2.20 was not legislatively authorized in order to confer such power in the DNR secretary. The court of appeals did not reach the issue of standing.

The issues presented for review are as follows:

(1)  Were substantial interests of the public intervenor adversely affected by the DNR's decision, in which the public intervenor was the prevailing party,

---

[2] Section 227.01(9), Stats., reads:

**227.01 Definitions.**  In this chapter:

. . .

**(9)**  'Person aggrieved' means a person or agency whose substantial interests are adversely affected by a determination of an agency.

Section 227.53(1), Stats., reads in pertinent part:

**227.53 Parties and proceedings for review. (1)**  Except as otherwise specifically provided by law, any person aggrieved by a decision specified in s. 227.52 shall be entitled to judicial review thereof as provided in this chapter.

. . .

so as to entitle the public intervenor to judicial review under sec. 227.52, Stats.?[3]

(2) Was the petition for review of the final decision of the DNR secretary to review the hearing examiner's decision properly dismissed as moot?

(3) Does the DNR have the authority to adopt Wis. Admin. Code sec. NR 2.20?

Because we hold that the public intervenor does not have standing as an aggrieved party in this case, we do not reach the issue of the validity of sec. NR 2.20.

The harbor at Green Bay, Wisconsin, functions as an industrial and commercial navigation waterway. In 1978, the U.S. Army Corps of Engineers (the Corps) dredged the harbor because it was subject to shoaling due to silt deposits from the Fox River. The spoils from the dredging were used to create Kidney Island, a CDF, about 55 acres in size.

Since extensive annual dredging is required to maintain the navigational quality of the harbor, the existing 55-acre CDF became insufficient to hold all the spoils generated. Proposing to expand the CDF by 126 acres,[4] the Corps filed an application in June, 1985,

---

[3] Section 227.52, Stats., reads in pertinent part:

**227.52 Judicial review; decisions reviewable.** Administrative decisions which adversely affect the substantial interests of any person, whether by action or inaction, whether affirmative or negative in form, are subject to review as provided in this chapter . . ..

[4] The CDF expansion was to be contiguous to the existing 55 acres. It would also include a structure with impermeable dike walls and a wastewater treatment system. The CDF would be situated on submerged shore lands in Lake Michigan, which the state granted to Brown County for this purpose. *See* 1985 Wis. Act 185, sec. 1, which provided as follows:

The state of Wisconsin cedes, grants and conveys to Brown county all rights, title and interest to all of the land and any part or parcel

with the DNR for water quality certification, pursuant to Wis. Admin. Code ch. NR 299.[5] In April, 1987, the DNR issued a notice of determination to grant the certification, subject to conditions.[6] On May 12, 1987, the DNR issued conditional plan approval for a water quality treatment facility as part of the CDF expansion.

The public intervenor and others challenged the actions of the DNR by requesting a contested case hearing regarding the initial certification. Following a hearing in January, 1988,[7] the hearing examiner reversed the DNR's certification. Brown County then pursued the following course of action in August and

---

of the lands described under Section 2 of this act to be held and used by Brown county for dredge spoil containment and for future development for wildlife refuges and recreation or park purposes, including public slips, basins, docks, wharves and other structures.

[5] Wis. Admin. Code ch. NR 299 is concerned with water quality certification and establishes the rules by which such certification will be granted or denied. Section NR 299.01 states in part:

> NR 299.01 Purpose and policy. (1)   This chapter is promulgated under ss. 144.025, 147.01 and 227.11(2)(a), Stats., to establish procedures and criteria for the application, processing and review of state water quality certifications required by the provisions of the federal water pollution control act, 33 USC ss. 1251 et seq.
>
> . . .

[6] Ten conditions were established by the DNR, including: (1) an effluent limitation for suspended solids; (2) monitoring requirements for temperature; (3) prohibition of discharge of acute toxics; (4) biomonitoring for PCBs; and (5) integrity tests for the facility, as well as other operational requirements.

The court of appeals upheld the DNR's action at this stage in *State Public Intervenor v. DNR,* 156 Wis. 2d 376, 456 N.W.2d 878 (Ct. App. 1990).

[7] Parties to the contested case hearing included Brown County, the Corps, the public intervenor, and the DNR.

September of 1988: (1) it filed a petition for administrative review of the hearing examiner's decision under sec. NR 2.20, and (2) it filed a petition for review of the hearing examiner's decision with the circuit court for Brown County.[8]

After the DNR secretary's acceptance of Brown County's petition for review but prior to the secretary's final decision, the public intervenor filed a petition for judicial review in the circuit court for Dane County, challenging the DNR secretary's authority to grant such a review. In February, 1989, the DNR secretary affirmed the decision of the hearing examiner to deny a permit to Brown County, though the secretary deleted certain findings of fact and modified a conclusion of law made by the hearing examiner. Again, the public intervenor petitioned for judicial review, challenging the DNR secretary's authority to review and amend the findings of the hearing examiner. Both petitions for review were consolidated, and, in August, 1991, the circuit court dismissed the first action as moot. The circuit court also dismissed the second action because the public intervenor was the prevailing party with regard to the DNR secretary's final decision. Since the public intervenor was not an "aggrieved" party within the meaning of secs. 227.01(9) and 227.53(1), Stats., he did not have standing to bring the second action.

The court of appeals certified the case to this court in November, 1992, and this court refused certification in December of that year (Abrahamson, J., dissenting). The court of appeals then issued its decision on the matter in June, 1993. Concluding that sec. NR 2.20 was not legislatively authorized either by sec.

---

[8] This action was stayed pending the outcome of the administrative review.

227.43(1), Stats.,[9] or by sec. 227.46(3), Stats.,[10] the court reversed the judgments of the circuit court.

Whether the public intervenor is an aggrieved party in this case is a question of law which we decide independently of the views of the lower courts. *See State v. Wisumierski,* 106 Wis. 2d 722, 733, 317 N.W.2d 484 (1982).

In a contested case such as this one, a two-part test has been developed to determine whether a party has

---

[9] Section 227.43(1), Stats., provides:

**227.43 Natural resources hearings. (1)** The administrator of the division of hearings and appeals in the department of administration shall:

(a) Serve as the appointing authority of all hearing examiners under s. 230.06.

(b) Assign a hearing examiner to preside over any hearing of a contested case which is required to be conducted by the department of natural resources and which is not conducted by the secretary of natural resources.

(c) Supervise hearing examiners in the conduct of the hearing and the rendering of a decision, if a decision is required.

(d) Promulgate rules relating to the exercise of the administrator's powers and duties under this section.

[10] Section 227.46(3), Stats., provides:

**227.46 Hearing examiners; examination of evidence by agency . . . .**

. . .

(3) With respect to contested cases, an agency may by rule or in a particular case may by order:

(a) Direct that the hearing examiner's decision be the final decision of the agency;

(b) Except as provided in sub. (2) or (4), direct that the record be certified to it without an intervening proposed decision; or

(c) Direct that the procedure in sub. (2) be followed, except that in a class 1 proceeding both written and oral argument may be limited.

been aggrieved by an agency decision. First, the petitioner must establish that it sustained an alleged injury due to an agency decision. *Waste Management of Wisconsin v. DNR,* 144 Wis. 2d 499, 505, 424 N.W.2d 685 (1988). Second, the petitioner must demonstrate that the injury is to an interest which the law recognizes or seeks to regulate or protect. *Id.* Although the magnitude of the injury is not determinative, the fact of the injury is. *State ex rel. 1st Nat. Bank v. M & I Peoples Bank,* 95 Wis. 2d 303, 308–09, 290 N.W.2d 321 (1980).

In this case, the public intervenor claims that the revision of the hearing examiner's findings of fact and conclusions of law adversely affected the public intervenor's substantial interests. *See* sec. 227.52, Stats. This is so, according to the public intervenor, because the DNR secretary's final decision would have *res judicata* effect on the public intervenor in subsequent permit application proceedings. Specifically, the public intervenor points to five findings of fact and part of a conclusion of law made by the hearing examiner which were deleted from the DNR secretary's final decision:

—Finding #22 concluded that there was not a reasonable assurance that the activity would be conducted in a manner which would not result in significant adverse effects on water quality in Green Bay, including the area known as Peats Lake;

—Finding #23 concluded that there was not a reasonable assurance that the activity would be conducted in a manner which would not result in significant adverse effects on waste load allocations for the dischargers in the lower Fox River and Green Bay under Wis. Admin. Code chs. NR 212 and NR 102;

—Finding #25 concluded that the Kidney Island CDF was not managed to protect wildlife,

and no management plan had been adopted to protect nesting waterfowl on the existing island or the proposed CDF expansion. Unless properly designed and managed, the CDF expansion was likely to cause adverse conditions similar to those in the existing CDF;

—Finding #27 concluded that the adverse effects which may be caused by the CDF expansion were avoidable due to the availability of an alternative disposal site;

—Finding #28 concluded that there was not a reasonable assurance that the CDF project would not result in a violation of regulatory standards which protect water quality, wildlife and other public rights;

—Conclusion of Law #7 concluded that under Wis. Admin. Code secs. NR 299.01(2)(b) and NR 299.06(3)(d) (1983), a grant of certification must be denied when no substantial evidence exists to show that the activity will be conducted in a manner which does not violate the standards of sec. NR 299.05(1) (1983).

In his final decision, the DNR secretary stated that as part of his preparation, he reviewed the hearing examiner's decision, the Brown County petition for review, briefs filed by the parties, the hearing transcript, filed testimony, and the certified record. He also appointed an advisory team with no prior involvement in the matter to provide technical and legal advice during the course of the review.

Further, when the DNR secretary reviewed the decision of the hearing examiner, he met with the hearing examiner to discuss in a detailed fashion the reported findings of fact and conclusions of law. In several instances, the DNR secretary made what he termed "minor amendments" for the purpose of clarify-

ing the hearing examiner's findings. If any of those amendments had the effect of varying from the hearing examiner's findings of fact and conclusions of law, the DNR secretary was statutorily bound to include in his decision an explanation regarding the basis for each variance. Section 227.46(2), Stats.

In *Voight v. Washington Island Ferry Line,* 79 Wis. 2d 333, 342, 255 N.W.2d 545 (1977), this court stated that

> [i]n giving deference to agency findings, the court is not relieved from the responsibility of determining whether the agency's ultimate decision is based on and reasoned from those findings. Frequently it is the case, as here, that the facts are collected and findings first made not by the decision-making agency, but rather by a hearing examiner. Consequently the Legislature and this court [have] required that where the agency's decision is contrary to the recommendation of the hearing examiner responsible for making the findings initially, the agency must itself explain on what evidence it has relied to support its result.

Not only has the final decision of the DNR secretary not varied in any significant way from the initial findings, the DNR secretary worked in concert with the hearing examiner to revise what both agreed were repetitive or inessential conclusions.[11] As a result, the following amendments were made:

> After a detailed discussion with the Examiner, Findings of Fact 22 and 23 have been deleted because they are repetitive. The Examiner's intent

---

[11] The DNR secretary notes in his final decision that the hearing examiner himself proposed amendments to clarify his own findings of fact and conclusions of law.

in these Findings of Fact was to merely expand upon Finding of Fact 21 . . ..

Evidence on wildlife may be relevant to a determination on water quality certification. In the present case such evidence could be relevant under the public interest test . . .. While the Examiner did not accept evidence relating to other CDFs . . ., he was not ruling that evidence on wildlife was irrelevant. The Examiner drafted Finding of Fact 25 to express his concern over the potential for impacts on wildlife based on their exposure to contaminated sediment. The Examiner agrees that this particular concern is not relevant to a determination on water quality certification, however, because there was no evidence presented which indicated that the activity will result in a violation of any water quality standard in the waters of the state . . .. Consequently Finding of Fact 25 has been deleted.

Finding of Fact 27 has been deleted because the Examiner agrees that it is repetitive. The Examiner's intent in this Finding of Fact was to merely expand upon Findings of Fact 8 and 9 . . . which adequately describe the evidence presented on the potential alternative disposal facility.

Finding of Fact 28 has also been deleted. The Examiner's intent . . . was to encompass the concerns expressed in Findings of Fact 21, 22, 23 and 25. For the reasons detailed in the paragraphs dealing with those earlier Findings of Fact, the Examiner agrees that Finding of Fact 28 is no longer appropriate and should be deleted.

. . .

Conclusion of Law 7 . . . has been narrowed because it was based on Finding of Fact 28, which has been deleted. It now is consistent with new Finding of Fact 27 and concludes that there is not reasonable

assurance that the activity will be conducted in a manner which will not result in a violation of a water quality standard for DO adopted under section 144.025(2)(b), Wis. Stats., as required by section NR 299.05(1)(b) 3., Wis. Adm. Code [1983].

Each of the amendments, according to the DNR secretary, were made only when supported by substantial evidence in the record, and "only after a detailed discussion with the Examiner to ensure that the new language conforms to the evidence presented before him."

Both the DNR secretary and the hearing examiner came to the same conclusion, that the water quality certification for the CDF project should be denied because (1) there was no substantial evidence upon which to base a finding that there would be reasonable assurances the activity would be conducted in a manner not violative of water quality standards; and (2) the DNR, in its initial decision, did not comply with Wisconsin Administrative Code requirements for the grant of certification in a contested case. In each proceeding, the public intervenor was the prevailing party. The petitioner was not aggrieved by the agency decision. Sections 227.01(9) and 227.53(1), Stats.

The public intervenor also contends that the DNR secretary's final decision will have *res judicata* effect on all future application proceedings for water quality certification. He argues that even a prevailing party has the right to appeal from parts of a judgment in his favor when the judgment is based upon findings adverse to his interests and essential to a disposition of the controversy. The absence of an appeal would establish the basis for collateral estoppel. *See Partmar Corp. v. Para-*

*mount Corp.,* 347 U.S. 89, *reh'g denied* 347 U.S. 931 (1954).

We disagree with the argument of the public intervenor. First, the findings of the DNR secretary were not adverse to the public intervenor's interests. With the cooperation of the hearing examiner, the DNR secretary amended only those findings which were repetitive and inessential. The conclusions of the DNR secretary and the hearing examiner remained the same. Second, even if the DNR secretary's findings and conclusions were substantially different than those of the hearing examiner, *res judicata* would not prevent changes or modifications to those findings and conclusions at a future hearing. *See Fond du Lac v. Dept. of Natural Resources,* 45 Wis. 2d 620, 625, 173 N.W.2d 605 (1970).

In *Lindas v. Cady,* 183 Wis. 2d 547, 515 N.W.2d 458 (1994), we considered the ability of courts to give preclusive effect to unreviewed agency decisions in subsequent court cases. However, the issue raised by the public intervenor in this case is not the effect of an agency's findings and conclusions on a subsequent court case, but rather the intra-agency effect of those findings and conclusions upon a new request for water certification. Since administrative agencies are tribunals of limited jurisdiction and dependent upon statutory grants of authority,[12] " '[t]he extent of the power of an administrative body or agency to reconsider its own findings or orders has nothing to do with res adjudicata . . ..' " *Fond du Lac,* 45 Wis. 2d at 625 (quoting *Duel v. State Farm Mut. Automobile Ins. Co.,* 240 Wis. 161, 181, 1 N.W.2d 887, 2 N.W.2d 871 (1942)). *See also Village of Prentice v. Wis. Transp. Comm.,* 123

---

[12] *See Peterson v. Natural Resources Board,* 94 Wis. 2d 587, 592–93, 288 N.W.2d 845 (1980).

Wis. 2d 113, 365 N.W.2d 899 (Ct. App. 1985); *Board of Regents v. Wisconsin Pers. Comm.,* 103 Wis. 2d 545, 309 N.W.2d 366 (Ct. App. 1981).

We conclude that the public intervenor has failed to establish that the DNR secretary's decision has caused him injury in fact. Even though the public intervenor prevailed before the DNR secretary, if a later reapplication for the certification is made, the parties cannot rely on *res judicata* or collateral estoppel to prevent the agency from examining all relevant information at the time of the request. Because the agency would then be able to reconsider the findings and conclusions it has made in this case, the public intervenor is not an aggrieved party on this review.

We now reverse the decision of the court of appeals and hold that the public intervenor was not an aggrieved party entitled to challenge the authority of the DNR secretary to review the hearing examiner's findings of fact and conclusions of law. The public intervenor was the prevailing party in the administrative hearing which denied water quality certification by the DNR for the expanded CDF project. The public intervenor did not lose his status as the prevailing party, even under the amended decision of the DNR secretary. Therefore, the public intervenor was neither a party aggrieved under secs. 227.01(9) and 227.53(1), Stats., nor a party whose substantial interests were adversely affected under sec. 227.52, Stats.

*By the Court.*—The decision of the court of appeals is reversed.