John O. NORQUIST, Kevin M. Crawford, Michael R. Miller, Joseph Laux, Dan Thompson, Edward Huck and Gerald Jorgensen, Petitioners,†

v.

Cate ZEUSKE, in her official capacity as secretary of the Wisconsin Department of Revenue, Respondent.

Supreme Court

*No. 96–1812–OA. Oral argument May 1, 1997.—Decided June 25, 1997.*

(Also reported in 564 N.W.2d 748.)

†Motion for reconsideration denied September 10, 1997.

241

For the petitioners there was a brief by *Robert Horowitz, Kristine A. Euclide* and *Stafford, Rosenbaum, Rieser & Hansen*, Madison and oral argument by *Robert Horowitz.*

For the respondent the cause was argued by *Alan Lee*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

Amicus curiae brief was filed by *H. Dale Peterson, Sverre David Roang*, and *Stroud, Stroud, Willink, Thompson & Howard*, Madison for The Wisconsin Farm Bureau Federation, Cooperative, The Farmers Educational & Cooperative Union of America, Wisconsin Division, The National Farmers Organization, The Wisconsin Agribusiness Council, The Wisconsin Agri-Service Association, Inc., The Wisconsin Cattlemen's Association, Cooperative, The Wisconsin Corn Growers Association, Inc., The Wisconsin Federation of Cooperatives, The Wisconsin Pork Producers Association, Cooperative, The Wisconsin Potato & Vegetable Grow-

ers Association, Inc., The Wisconsin Soybean Association, Inc., and The Wisconsin State Cranberry Growers Association.

Amicus curiae brief was filed by *Richard J. Stadelman, Executive Director, Shawano, for the Wisconsin Towns Association.*

¶ 1. JON P. WILCOX, J. On June 25, 1996, John Norquist, mayor of the City of Milwaukee; Kevin Crawford, mayor of the City of Manitowoc; Michael Miller, mayor of the City of West Bend; Joeseph Laux, mayor of the City of Menasha; Dan Thompson, executive director of the League of Wisconsin Municipalities; Edward Huck, executive director of the Wisconsin Alliance of Cities; and Gerald Jorgenson, an owner of agricultural land in Wisconsin, sought leave to commence an original action against Mark Bugher, in his capacity as the secretary of the Wisconsin Department of Revenue pursuant to WIS. CONST. art. VII, § 3(2) and Wis. Stat. § 809.70(1) (1995–96).[1] We accepted the petition to commence an original action on October 21, 1996. On February 6, 1997, this court granted a joint motion by the parties to substitute the new secretary of the Department of Revenue, Cate Zeuske, for the former secretary of the Department of Revenue, Mark Bugher.

¶ 2. Three issues are identified for our consideration: (1) whether the petitioners have standing to challenge the constitutionality of Wis. Stat. § 70.32(2r), (2) whether §§ 70.329(2r)(a) and (b) violate the Uniformity Clause of the Wisconsin Constitution, and (3) whether §§ 70.32(2r)(a) and (b) are severable from

---

[1] Unless otherwise stated, all future statutory references are to the 1995–96 volume.

§ 70.32(2r)(c). We hold that Jorgensen, who owns agricultural land, has standing to challenge the constitutionality of § 70.32(2r) and that given the state of the record, a decision by this court would be premature.

¶ 3. The relevant facts are not in dispute. Wis. Stat. § 70.32(2r) was enacted by Wis. Act 27, § 3362h and became effective January 1, 1996. Section 70.32(2r) provides:

> **(2r)**(a) For the assessments as of January 1, 1996, and January 1, 1997, or until the farmland advisory council under s. 73.03(49) makes its final recommendation, but not to extend beyond January 1, 2009, the assessed value of each parcel of agricultural land is the assessed value of that parcel as of January 1, 1995.
>
> (b) For each year beginning with 1998 or upon completion of the farmland advisory council's recommendation and promulgation of rules and ending no later than December 31, 2008, the assessed value of the parcel shall be reduced as follows:
>
> 1. Subtract the value of the parcel as determined according to the income that is or could be generated from its rental for agricultural use, as determined by rule, from its assessed value as of January 1, 1996.
>
> 2. Multiply .1 by the number of years that the parcel has been assessed under this paragraph, including the current year.
>
> 3. Multiply the amount under subd. 1. by the decimal under subd. 2.
>
> 4. Subtract the amount under subd. 3. from the parcel's assessed value as of January 1, 1996.
>
> (c) For the assessment as of January 1 after the valuation method under par. (b) no longer applies and for each assessment thereafter, agricul-

245

tural land shall be assessed according to the income that could be generated from its rental or agricultural use.

¶ 4. Thus, the statute provides for three phases in transforming agricultural land[2] assessments for property taxes from a market value system[3] to a use value system. The first phase, created by subsection (a), freezes assessments of agricultural land at the January 1, 1995, assessment level. This freeze, which began in 1996, will last for at least two years. Subsection (b) provides for a mixed assessment system that will last from the end of the initial freeze until 2009. During this period, agricultural land will be assessed based partly on the frozen market value assessments and partly on land's agricultural use value. In each year during this phase, the market value assessment is reduced by ten percent and the use value portion of the assessment is increased by ten percent. In 2009, the mixed assessment period ends and agricultural land will be assessed based entirely on its agricultural use value.

¶ 5. Jorgensen owns agricultural land in the State of Wisconsin and pays real property taxes on that land. His land is subject to the freeze in the assessments of agricultural land created in Wis. Stat. § 70.32(2r)(a). The remaining petitioners, including the

---

[2] Agricultural land is defined in Wis. Stat. § 70.32(2)(c)1 as:

1. "Agricultural land" means land, exclusive of buildings and improvements, that is devoted primarily to agricultural use, as defined by rule.

[3] Before January 1, 1996, agricultural land, like other real property, was assessed at the "full value which could ordinarily be obtained therefor at private sale." Wis. Stat. § 70.32(1) (1993–94).

mayors, each own land in the State of Wisconsin that is not designated as agricultural land and each pays real property taxes on that land.

¶ 6. The petitioners brought this action to challenge the constitutionality of Wis. Stat. § 70.32(2r). The petitioners contend that the freeze established in subsection (a) violates the Uniformity Clause of the Wisconsin Constitution. WIS. CONST. art. VIII, § 1. The petitioners further contend that subsection (b) also violates the Uniformity Clause because the market value portion of the mixed assessment is based on the frozen amount designated in subsection (a). Finally, the petitioners assert that because subsections (a) and (b) are not severable, § 70.32(2r) must be invalidated in its entirety. Zeuske not only disagrees with the petitions contentions regarding the constitutionality of § 70.32(2r) and the severability of subsections (a) and (b), but also maintains that the petitioners lack standing to challenge the statute.

## I.

¶ 7. The first issue that we consider is whether the petitioners have standing to challenge the constitutionality of Wis. Stat. § 70.32(2r). The central standing question is whether "a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." *State ex rel. First National Bank of Wisconsin Rapids v. M&I Peoples Bank of Coloma*, 95 Wis. 2d 303, 307–08, 290 N.W.2d 321 (1980), quoting *Sierra Club v. Morton*, 405 U.S. 727, 731 (1972). Wisconsin employs a two-step standing analysis. The analysis requires the court to determine (1) whether the plaintiff has suffered a threatened or actual injury, and (2) whether the inter-

est asserted is recognized by law. *Waste Management of Wisconsin, Inc., v. State of Wisconsin Department of Natural Resources*, 144 Wis. 2d 499, 505, 424 N.W.2d 685 (1988); *First National Bank*, 95 Wis. 2d at 308; *Wisconsin's Environmental Decade, Inc. v. Public Service Comm.*, 69 Wis. 2d 1, 10, 230 N.W.2d 243 (1975).

■

¶ 8. The petitioners assert that Wis. Stat. § 70.32(2r) violates the Uniformity Clause. The Uniformity Clause as set forth in Article VIII, § 1 of the Wisconsin Constitution provides in relevant part:

> The rule of taxation shall be uniform, but the legislature may empower cities, villages or towns to collect and return taxes on real estate located therein by optional methods. . . . *Taxation of agricultural land and undeveloped land, both as defined by law, need not be uniform with the taxation of each other nor with the taxation of other real property.*

(Emphasis added.) The last sentence of the Uniformity Clause, quoted above, was established in 1974. This amendment makes clear that agricultural land need not be uniformly taxed as compared to other types of property, but it must be taxed uniformly as compared to other agricultural land. *See McManus v. Department of Revenue*, 155 Wis. 2d 450, 454–455, 455 N.W.2d 906 (Ct. App. 1990) ("Under the amendment, agricultural land may be taxed in a manner that is not uniform with the taxation of other real property. However the uniformity requirement still applies within the agricultural classification itself.").

¶ 9. The petitioners claim that Wis. Stat. § 70.32(2r)(a) violates the Uniformity Clause because the freeze of assessments at 1995 levels will result in more preferential tax treatment for some agricultural

land than for other agricultural land. They point out that, inevitably, the value of some agricultural land will decrease and the value of other agricultural land will increase during the period of the freeze. Thus, according to the petitioners, the freeze in assessments will result in non-uniform taxation.

¶ 10. One of the petitioners, Jorgensen, owns agricultural land. As he owns agricultural land, his status is logically related to his claim that Wis. Stat. § 70.32(2r) violates the Uniformity Clause. Jorgensen, however, must also satisfy the actual injury requirement.

¶ 11. Jorgensen asserts that he has proven actual injury because he may be compelled to pay higher property taxes as a result of Wis. Stat. § 70.32(2r). This possibility of higher taxes derives from the fact that Jorgensen owns agricultural land which is subject to the market value freeze created by subsection (a). The property value of at least some agricultural land will increase each year to the benefit of the owners of that land; however, the market value of some agricultural land will inevitably decrease resulting in an assessment that is relatively higher under the freeze for those land owners. Jorgensen maintains that because the value of his agricultural land could decrease and will inevitably change by a degree different from other agricultural land, he has demonstrated the injury necessary for standing.

■

¶ 12. We agree. The injury necessary for standing must be actual or threatened. Jorgensen's property values may decrease resulting in higher real property taxes relative to other agricultural land. In addition, it is certain that during the freeze, the value of Jorgensen's property will change by an amount different from

other agricultural land. Thus, even if Jorgensen does benefit from the freeze he will not benefit by the same amount as other owners of agricultural land. As we have determined that Jorgensen has satisfied both the actual injury and logical nexus requirements, we conclude that he has standing to challenge the constitutionality of Wis. Stat. § 70.32.[4]

## II.

■

¶ 13. The next issue that we address is whether Wis. Stat. §§ 70.32(2r)(a) and (b) violate the Uniformity Clause of the Wisconsin Constitution. All legislative acts are presumed constitutional and every presumption must be indulged to uphold the law if at all possible. *Gottlieb v. City of Milwaukee*, 33 Wis. 2d 408, 415, 147 N.W.2d 633 (1967) (citations omitted). The party challenging the constitutionality of a statute has the burden to prove that the statute is unconstitutional beyond a reasonable doubt. *State v. Carpenter*, 197 Wis. 2d 252, 263, 541 N.W.2d 105 (1995). Constitutional challenges to a statute must overcome a strong presumption of constitutionality. *State v. Theil*, 188 Wis. 2d 695, 706, 524 N.W.2d 641 (1994). We must not construe a statute to violate the constitution if it can possibly be construed consistent with the constitution. *Demmith v. Wisconsin Judicial Conference,*166 Wis. 2d 649, 664 FN 13, 480 N.W.2d 502 (1992). Finally, when the statute concerns a tax measure, the presumption of constitutionality is the strongest. *Treiber v. Knoll*, 135 Wis. 2d 58, 66, 398 N.W.2d 756 (1987).

---

[4] We need not consider the standing of the other petitioners as we conclude that Jorgensen has standing to challenge the statute.

¶ 14. In *State ex rel Fort Howard Paper Co. v. State Lake Dist. Bd.*, 82 Wis. 2d 491, 263 N.W.2d 178 (1978), this court considered what is required of a taxpayer who challenges a statute on the basis that it violates the Uniformity Clause. In that case, the petitioner alleged that a statute required him to pay a disproportionate amount of property taxes in violation of the Uniformity Clause. The statute provided that beginning in 1974 the department of revenue was to revalue each year as many taxation districts as the availability of staff would permit. It further required that the department of revenue complete the valuation of all manufacturing property in the state every four years. Before the statute was enacted the local assessor had conducted annual property assessments. The petitioner was reassessed in 1975. This reassessment resulted in a 57% increase in the assessed value of the petitioner's property. *Id.* at 497. Based on this increase and the fact that other property owners might not be reassessed until three years later, the petitioner alleged that the statute was unconstitutional. Specifically, the petitioner maintained that the four year cyclical valuation plan created by the statute violated the Uniformity Clause. *Id.* at 510.

¶ 15. We described the basis for finding that the petitioner in *Fort Howard* had not proven non-uniform valuation as follows:

> Before the petitioner can begin to carry its heavy burden of proving unconstitutionality, it must first prove that a number of valuations were incorrect. For 1975, the petitioner must prove that its improvements were overvalued and that Green Bay residents or other Lake District manufacturers were undervalued.

251

*Id.* at 507–508. Accordingly, to satisfy the burden of proving a statute unconstitutional due to a violation of the Uniformity Clause, a taxpayer must initially prove that his property has been overvalued or over assessed while other property has been undervalued or under assessed.[5]

¶ 16. Jorgensen has not offered any evidence that his property is over assessed or that other agricultural land is under assessed. Jorgensen asserts that because some agricultural land will change in value, it will not be taxed uniformly, and, therefore, Jorgensen's property will not be treated uniformly. The State maintains that this information is not a sufficient basis to declare the statute either constitutional or unconstitutional. At oral argument, the State asserted that it should not win now and that this court should not have taken this case. We agree that the record is not sufficiently developed and that a decision in this case would be premature. *See Fort Howard*, 82 Wis. 2d at 510.

¶ 17. In determining that Jorgensen's action is premature, we do not declare the statute either constitutional or unconstitutional. A determination of the constitutionality of § 70.32(2r) must await a more developed record. Although this petitioner's claim is premature, a property owner may be able to prove the statute unconstitutional in the future.

---

[5] As was noted by this court in *Fort Howard*, the same analysis applies to allegations of both non-uniform assessments and non-uniform valuations: "[The] difference [between non-uniform assessment and non-uniform valuation] is unimportant because Art. VIII, § 1, requires both uniform rates and uniform valuations." *Fort Howard*, 82 Wis. 2d at 507 fn. 6, citing *Knowlton v. Supervisors of Rock County*, 9 Wis. 410, 421 (1859).

¶ 18. To prove the statute unconstitutional, an owner of agricultural land will have to (1) satisfy the initial burden by proving that his agricultural land is over assessed and that other agricultural land is under assessed as a result of the statute, and (2) demonstrate beyond a reasonable doubt that Wis. Stat. § 70.32(2r) does not create uniform taxation of agricultural land to the extent practicable.[6]

## III.

¶ 19. As we conclude that this action is premature, we do not reach the question of whether §§ 70.32(2r)(a) and (b) are severable from § 70.32(2r)(c).

*By the Court.*—Dismissed without prejudice.

[6] In *Gottlieb*, we made clear that the Uniformity Clause requires practical uniformity rather than absolute uniformity. In that case, we set forth that the Uniformity Clause dictates that those within a class of property "must be taxed on a basis of equality so far as practicable . . ." *Gottlieb*, 33 Wis. 2d at 424. We further stated in *Gottlieb* that "[t]here can be variations in the mechanics of property assessment or tax imposition so long as the resulting taxation shall be borne with as nearly as practicable equality on an *ad valorem* basis with other taxable property." *Gottlieb*, 33 Wis. 2d at 424; *see also Plankinton Packing Co. v. Wisconsin Tax Comm.*, 198 Wis. 368, 224 N.W. 121 (1929). Thus, taxation need only be uniform to the extent practical under the circumstances.